FIREMAN'S FUND INSURANCE COMPA-
NY et al., Petitioners,

v.

COMMERCIAL STANDARD INSURANCE
COMPANY et al., Respondents.

No. B–3157.

Supreme Court of Texas.

Nov. 15, 1972.

Rehearing Denied March 14, 1973.

Cantey, Hanger, Gooch, Cravens & Munn, Tolbert L. Greenwood and Howard Barker, Fort Worth, for petitioners.

Garrett, Settle & Callaway, Rufus S. Garrett, Jr., Stone, Tilley, Parker, Snakard,

Law & Brown, G. W. Parker, Jr., Fort Worth, for respondents.

DANIEL, Justice.

This is a declaratory judgment action brought by Thomas S. Byrne, Inc. and its liability insurance carrier, Commercial Standard Insurance Company, against Sam P. Wallace Co., Inc. and its insurance carrier, Fireman's Fund Insurance Company, and General Motors Corporation and its insurance carrier, Royal Indemnity Insurance Company, for the construction of certain indemnity provisions in a contract between Wallace and General Motors. The question is whether Wallace was ultimately liable for a sum paid by Byrne and Commercial Standard in settlement of a suit brought by a Wallace employee against General Motors.

The contract contains two indemnity sections (Sec. 12 and Sec. 20). The trial court held that the language of Section 12 was broad enough to indemnify General Motors against losses from injuries sustained by the Wallace employee even if they resulted from the sole negligence of General Motors, and that in any event Wallace was liable because the evidence showed that the accident was due to the sole negligence of Wallace employees and not to any negligence of General Motors. The Court of Civil Appeals affirmed. 478 S.W.2d 811. We disapprove the above mentioned conclusions with reference to Section 12 but affirm on the basis of other findings and conclusions of the courts below.

On October 2, 1964, General Motors executed separate contracts with Thomas S. Byrne, Inc., as general contractor and with Sam P. Wallace Co., Inc., for the mechanical superstructure work on an annex to its Arlington plant. The contracts contained identical liability insurance and indemnity provisions for General Motors' protection. General Motors' contract with Wallace was assigned to Byrne under provisions specifically permitting such assignment. Thereafter, Wallace became a subcontractor under Byrne with no change in the terms of its insurance and indemnity obligations to General Motors.

While working on that part of the job being performed by Wallace, two Wallace employees, R. L. Gamble and Woodrow W. Frith, were injured when they fell from a scaffold which overturned. Both were paid workmen's compensation benefits by Fireman's Fund, which also carried Wallace's compensation insurance. The two employees then filed separate personal injury suits against General Motors, alleging that General Motors negligently permitted an automobile frame on a conveyor in the assembly line to come in contact with and overturn the scaffold. Fireman's Fund intervened seeking recovery of the compensation benefits paid. In both suits General Motors filed third party actions against Byrne for indemnity, and Byrne in turn filed a fourth party action for indemnity against Wallace in the Gamble suit. Thereafter, the collective defendants and their insurance carriers entered agreements whereby Byrne and its carrier, Commercial Standard, would defend the suits against General Motors. It was further agreed that Byrne and Commercial Standard would dismiss Wallace and Fireman's Fund from the Gamble suit; that they would not make Wallace a party to the Frith suit; and that this would be without prejudice to Byrne or Commercial in a subsequent action against Wallace and Fireman's Fund for the purpose of determining ultimate liability, if any, of Wallace under its contract with General Motors.

After the jury failed to agree in Gamble's case, Commercial Standard made a $20,000 settlement with him, having first obtained written consent of Wallace and Fireman's Fund, the latter agreeing not to assert the $9,782 subrogation claim against Gamble and that Byrne and Commercial might bring this declaratory judgment action to determine "the liability of Wallace to indemnify Byrne or General Motors" for the amount of the settlement and expenses of the defense. It was also agreed that if it were

determined that Wallace had no indemnity obligation that Byrne and Commercial Standard would pay the compensation subrogation claim to Fireman's Fund.[1]

The relevant sections of the contract between Wallace and General Motors are as follows:

## "12. LIABILITY INSURANCE

"The Contractor shall protect the Owner and Architect-Engineer against all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of work under this specification. The contractor assumes all liability for any injuries or damages occasioned by his agents or employes on the premises of the Owner regardless of whether such agent or employe is, at the time of such injury to [sic] damage, acting within the scope of his employment.

"All insurance policies are to be issued by companies authorized to do business under the law of the State in which the work is to be done and copies of said policies shall be filed with the Owner before work is started.

"Limits for Liability Insurance shall be not less than $100,000.00 for injury to one person, $300,000.00 for injury to more than one person, and $100,000.00 for property damage.

"Contractor shall protect the Owner and Architect-Engineer against all claims arising from the use of passenger automobiles, motor trucks, and other motor vehicles owned and operated by the Contractor and/or employes of the Contractor in connection with the work herein specified. Contractor shall submit to the Owner and Architect-Engineer certificates of insurance evidencing public liability and property damage coverage on all such vehicles.

"In addition to the Liability Insurance for the protection of the Owner and Architect-Engineer, the Contractor shall, during the continuance of the work under this contract and also extra work in connection therewith, maintain Liability Insurance for injury and/or death to any of his employes and/or to other persons, including any liability which may arise by virtue of the statute or law now in force or which may hereafter be enacted." ·

\* \* \* \* \* \*

## "20. CONTRACTOR'S RESPONSIBILITY

"All Contractors shall be responsible each for his work and every part thereof, and for all materials, tools, appliances, and property of every description used in connection therewith, (in case of general contract, General Contractor assumes entire responsibility). They shall specifically and distinctly assume and do so assume all risks of damage or injury from any cause *except negligence of Owner,*[2] its officers, agents and employes, to property or persons used or employed on or in connection with the work, and of all damage or injury to any persons or property wherever located, resulting from any action or operation under the contract or in connection with the work, and undertake and promise to protect and defend the Owner and Architect-Engineer against all claims on account of any such damage or injury. (See Item 12 'Liability Insurance', Paragraph 1, also Item 13 'Fire and Supplemental Insurance', Paragraph 2)."

The conclusion of the lower courts that Wallace is liable to General Motors under the general language contained in Section

---

1. The parties have informed the Court that the Frith case was similarly settled, with Fireman's Fund paying $9500 to Frith with the consent of Byrne and Commercial Standard, without prejudice to this appeal and with ultimate responsibility for the cost of settlement, as well as Fireman's $4621 subrogation claim, to be determined by the result of this appeal.

2. Emphasis is supplied throughout this opinion unless otherwise noted.

822

12, regardless of whether the injuries were caused by the negligence of General Motors, is contrary to our recent holding in Joe Adams & Son v. McCann Construction Company, 475 S.W.2d 721 (Tex. 1971). See also Sira and Payne, Inc. v. Wallace and Riddle, 484 S.W.2d 559 (Tex. 1972); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex. 1963); Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957); and Westinghouse Electric Corp. v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ.App., 1961, writ. ref.).

■ The above cases stand for the general rule followed in Texas and a majority of other jurisdictions that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms. These decisions indicate a progressively stricter application of the rule in this State. Our opinion in *McCann, supra,* was by a divided court with a vigorous dissent, the author of which later, in *Sira and Payne, supra,* wrote for the court in applying the *McCann* decision and in stating its holding,

" . . . that an indemnity agreement will not be held to protect an indemnitee against the consequences of his own negligence unless the obligation is expressed in clear and unequivocal language; and, moreover, the effect of our decision was to hold that parol evidence is not admissible to show that such was the intention of the parties when the obligation is expressed in language which is unclear or equivocal."

■ We have, in fact, progressed toward the so-called "express negligence" rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence. In this connection, it should be clear from our opinion in *McCann, supra,* including its discussion of the

leading cases and modification of our opinion in Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.1963), that broad general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and that the only presently recognized exceptions are limited to (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in Mitchell's, Inc. v. Friedman, *supra,* and Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920); (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract, as in *Spence & Howe, supra;* and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees as in *Ohio Oil, supra.*

■ None of the above exceptions appear in the contract between Wallace and General Motors. The general language on which the lower courts placed principal reliance is in the first sentence of Section 12, which provides that contractor (Wallace) shall protect the owner (General Motors) "against all liabilities, claims or demands for injuries or damages to any person . . . *growing out of the performance of work under this specification.*" In *McCann,* we held that similar general words of indemnity against injuries "sustained by any party or parties through or on account of any act or *in connection with the work*" of the subcontractor were insufficient to clearly indicate an intention to protect the contractor-indemnitee against liability for damages caused solely by the latter's own negligence. We also held that all of the relevant provisions of the contract should

be considered in arriving at its intent and meaning. We must consider the second sentence in Section 12, which speaks only of the contractor assuming "liability for any injuries or damages occasioned by his agents or employees on the premises of the owner . . . ." The third paragraph of Section 12 provides for protection from liability arising from the use of trucks and other vehicles of the contractor and his employees operated in connection with the work, and the last paragraph relates to liability insurance for the protection of Wallace. Finally, Section 20 entitled "Contractor's Responsibility," specifically excepts "negligence of Owner [General Motors]" from the risks of damages or injury assumed by Wallace and concludes with a parenthetical reference to Section 12.

We cannot agree with the contention of Byrne and Commercial that the requirement in Section 12 that Wallace carry certain liability insurance for the protection of General Motors evidenced an intention to cover negligent acts of the latter. While the meaning of the contract provisions relating to liability insurance are not clear, the most reasonable construction is that they were to assure performance of the indemnification agreement as entered into by the parties. Such provisions are often required to guard against insolvency of the indemnitor, and they should not be considered as any evidence of intent to broaden the contractual indemnity obligation. Standard Oil Co. v. Wampler, 218 F.2d 768 (5th Cir. 1955); Kansas City Power & Light Co. v. Federal Constr. Corp., 351 S.W. 2d 741 (Mo.1961). See also Traveler's Indemnity Company v. Equipment Rental Company, 345 S.W.2d 831 (Tex.Civ.App. 1961, writ ref. n. r. e.).

Considering all of the indemnity provisions of the contract together, we find no clear and unequivocal language showing that the contract was intended to indemnify General Motors against the consequences of its own negligence. Therefore, we dis-

approve the holdings of the lower courts to the contrary.

We next consider the lower courts' alternative holdings against Wallace and Fireman's Fund based upon the trial court's finding that "the injuries resulted solely from the negligence" of Wallace's employees, Gamble and Frith. The case was tried informally and without a jury on stipulations, admissions and exhibits from the court files in the Gamble and Frith cases. Only the transcript and a partial stipulated statement of facts were brought forward on appeal.

■ Since there was a settlement made with Gamble by Byrne and Commercial Standard without any judicial determination of whether General Motors was negligent as alleged in Gamble's petition, Byrne and Commercial Standard properly assumed the burden of showing that the accident occurred during the performance of Wallace's work under the contract; that General Motors had a potential liability in the Gamble suit; that the settlement with Gamble was reasonable considering the risk involved, and was made in good faith; and that the accident was not in fact due to any negligence on the part of General Motors. Sira & Payne, Inc. v. Wallace and Riddle, *supra;* Mitchell's, Inc. v. Friedman, *supra.*

Wallace and Fireman's Fund admitted that the accident occurred during the performance of Wallace's contract and that Gamble and Frith were injured in the accident "while in the performance of their work as employees of Sam P. Wallace, Inc. in the course and scope of their employment." The potential liability of General Motors and the reasonableness and good faith nature of the settlement was demonstrated in the evidence of a hung jury in the first Gamble trial which caused admittedly reasonable attorneys' fees in the sum of $9,108, and by the written consent of Wallace and Fireman's Fund to the settlement. The latter made no contest of the reasonableness of the settlement in the trial court. They stated in their briefs filed in the Court

of Civil Appeals and in this Court that they "do not contest the reasonableness of the amount of the settlement," but contend that they were entitled to have Byrne and Commercial "prove facts which might have rendered GM liable to Gamble if the settlement had not been reached."

■ Petitioners further assert that their consent to the settlement "has the effect of binding Petitioners and Respondents to the reasonableness of the amount of the settlement and the *liability of GM to Gamble*." On appeal, Wallace and Fireman's Fund assert two conflicting arguments: (1) that "the evidence establishes as a matter of law that GM was not liable" and that, consequently, a voluntary settlement on its behalf was unreasonable, and (2) that Byrne and Commercial are foreclosed from denying General Motors' negligence "not only by the settlement for GM's negligence, but by the allegations of negligence in the petitions of Gamble and Frith." They contend as a matter of law that Byrne and Commercial Standard could not make a reasonable settlement based on the potential liability of General Motors and then prevail in this indemnity action on a showing that the accident was not in fact caused by any negligence of General Motors. We disagree with this contention.

It is not at all unusual for an indemnitee to "buy his peace" with a plaintiff and at the same time contend in a subsequent indemnity action that he was not in fact negligent or liable in the case which was settled. Gamble was seeking $200,000 in damages against General Motors, and it cost over $9,000.00 in attorneys' fees for the first trial. With another trial and another like expenditure in the offing, and considering the risk involved, it is not surprising that all of the parties to this action consented to a settlement with Gamble for $20,000.00. Evidently, it was thought by all to be a reasonable and prudent settlement regardless of who might be held ultimately liable for its payment. Otherwise, Wallace and Fireman's Fund would not have given their consent to it.

■ Under these circumstances, the Gamble pleadings and the settlement with him do not constitute an admission of General Motors' negligence, and neither do they foreclose any rights of indemnity subsequently asserted on the grounds that General Motors was not in fact negligent. Regardless of the pleadings of a claimant asserting negligence of the indemnitee and the settlement by the indemnitee with the consent of the indemnitor, or after the indemnitor declined to defend, the issue of whether indemnitee was actually negligent is to be decided in the subsequent indemnity suit. Sira & Payne, Inc. v. Wallace and Riddle, *supra;* Crews Well Service v. The Texas Company, 358 S.W.2d 171 (Tex.Civ. App.1962) affirmed per curiam in 360 S.W. 2d 873 (Tex.1962).

■ Some jurisdictions require that the indemnitee prove actual rather than potential liability to the plaintiff with whom he has settled before he can recover the amount of the settlement from the indemnitor. This rule obviously is a discouragement to settlements of cases when there is a future indemnity suit yet to be tried. Texas does not follow this rule. Our courts have held that it is sufficient for the settling indemnitee to show a potential liability and that his settlement was reasonable, prudent and in good faith under the circumstances. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1959); Mitchell's, Inc. v. Friedman, *supra;* Missouri Pacific Railroad Company v. Southern Pacific Company, 430 S.W.2d 900 (Tex.Civ.App., 1968, writ ref. n. r. e.). Byrne and Commercial Standard fully met their burden of proof on these issues.

■ The evidence that the accident was caused by the Wallace employees, Gamble and Frith, and not by General Motors, consisted of 27 pages of testimony given in the Gamble trial by Wayne C. Starnes, who was Wallace's construction superintendent on the General Motors job. Starnes was an eye-witness to the accident and his testi-

mony clearly supports the trial court's finding that "such injuries resulted solely from the negligence of Gamble and Frith." The record does not show whether a proper predicate was laid for the use of the testimony of this witness given in another trial. With no exception or assignment of error based on this particular point, we can only assume that the proper predicate was laid or that it was waived.

The only question raised on this appeal concerning the Starnes testimony in the Gamble suit concerns the manner in which it was brought into the record for consideration by the trial court. Byrne and Commercial Standard attached what appears to be a court reporter's transcript of the testimony to its Requests for Admissions addressed to Wallace and Fireman's Fund. They were asked in Request No. 3 to admit "that Exhibit 'C' attached hereto is a true copy of the testimony of Wayne C. Starnes at the trial of Cause No. 47839–C . . . styled R. L. Gamble vs. General Motors Corporation, et al." In reply, Wallace and Fireman's Fund moved that the request be stricken as being outside the scope and intent of Rule 169 Texas Rules of Civil Procedure, and because it was irrelevant and immaterial. Subject to the foregoing, these defendants answered that they "are without sufficient information to admit or deny the Request."

Wallace annd Fireman's Fund did not comply with that portion of Rule 169 which, under the circumstances, requires a sworn statement *"setting forth in detail* the reasons why" they "cannot truthfully either admit or deny." The trial court granted additional time for the defendants to file a verified denial, and upon failing to do so, the request was deemed admitted.

 The primary purpose of Rule 169, which was taken with minor textual changes from Federal Civil Rule 36 as it existed in 1941, is to simplify trials by eliminating matters about which there is no real controversy, and there is some discretion lodged in the trial court in its enforcement. Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206 (1950). Its proper use has been encouraged by our courts and extended to matters of fact within the knowledge of or *readily ascertainable by* the litigant of whom the request is made. Masten v. Masten, 165 S.W.2d 225 (Tex. Civ.App., 1942, writ ref.); Watson v. Godwin, 425 S.W.2d 424 (Tex.Civ.App., 1968, writ ref. n. r. e.); McPeak v. Texas Department of Public Safety, 346 S.W.2d 138 (Tex.Civ.App., 1961, no writ). In the spirit of cooperation required by this Rule, Wallace and Fireman's Fund should have ascertained the accuracy of this transcription from the court reporter if that could have been done without cost or considerable burden. If not, they should have filed a sworn statement setting forth in detail why they could not truthfully admit or deny without taking on a costly and unreasonable burden and lodged an objection on the same grounds. They did neither. Under such circumstances, the trial court did not abuse its discretion in deeming the request as admitted.

 In Request No. 6, plaintiffs asked defendants to admit the Starnes' testimony "to be true and correct." Defendants made the same objections as to Request No. 3. Clearly, Request No. 6 was outside the scope and purpose of Rule 169, and defendants' objection to it should have been sustained. The rule does not require a litigant to admit or deny the truth or falsity of another person's testimony in the trial of another case, and the trial court has no discretion to so extend the scope and purpose of the Rule.[3] However, the error was harmless in this case, because the truth of

---

3. 4A Moore's Federal Practice, § 36:04, pp. 36–28 to 36–48; 20 A.L.R.3d 764. See Syracuse Broadcasting Corporation v. Newhouse et al., 271 F.2d 910 (2nd Cir. 1959); Johnstone v. Cronlund, 25 F.R.D. 42 (E.D.Penn.1960); Securities and Exchange Comm'n v. Micro-Moisture Controls, Inc. et al., 21 F.R.D. 164 (S.D.N.Y. 1957); and Booth Fisheries Corp. v. General Foods Corp., 27 F.Supp. 268 (D. Del.1939).

**826**

Starnes' testimony was never put in issue. Wallace and Fireman's Fund offered no testimony in contradiction of it or in any manner bearing on the question of whose negligence caused the accident, and on appeal they admitted in connection with their argument against the reasonableness of the settlement that "the evidence establishes as a matter of law that GM was not liable."

We have given careful consideration to Petitioner's other points of error, and they are overruled.

Having heretofore noted our disapproval of the holdings below based alone upon Section 12 of the contract, the judgments of the lower courts are otherwise affirmed.

WALKER, J., not sitting.