Billye McCLANE, Mother, and Don Holliday, Father, as Representatives of the Estate of Donaly Royce Holliday, Deceased, et al., etc., Plaintiffs,

v.

SUN OIL COMPANY, Defendant–Third Party Plaintiff–Appellee–Cross Appellant,

v.

TEXAS TANQUE MANUFACTURING COMPANY, INC., Third Party Defendant–Appellant–Cross Appellee.

No. 79–3416.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 20, 1981.

Rehearing Denied Feb. 17, 1981.

Rassman, Gunter & Boldrick, John E. Gunter, Midland, Tex., for Texas Tanque.

Griffis & Griffis, Tom H. Whiteside, San Angelo, Tex., for plaintiffs.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., James M. O'Leary, Odessa, Tex., for Sun Oil Co.

Before GOLDBERG, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Sun Oil Company owned two leases in Reagan County, Texas, on which it conduct-

ed oil drilling operations. Located on the same property was a facility which serviced those wells. The facility originally included a water tank and an oil storage tank. Due to an increase in production, Sun Oil decided to add another oil storage tank, which it obtained from another of its facilities. The two original tanks were connected by an elevated walkway. Sun Oil employed Texas Tanque to extend this walkway to reach the additional tank, which had been positioned there a few days earlier. Texas Tanque hired a subcontractor, Don Holliday Erection Company, to perform the work. The subcontractor had nearly completed its work when an explosion occurred in the newly arrived storage tank. Two of the four members of the construction crew were killed, and the other two sustained injuries.

The plaintiffs, being the two surviving crew members and the families of the two deceased members, brought suit for personal injuries and death against Sun Oil Company. Sun Oil Company filed a third–party action against Texas Tanque seeking indemnity under the terms of a Contract and Services Agreement. The cases, having been consolidated, were tried before a jury. At the close of the evidence, Texas Tanque moved for a directed verdict. The district court granted Texas Tanque's motion regarding tortious liability but reserved its ruling on Texas Tanque's duty to indemnify Sun Oil.

The jury deliberated thirteen hours before it returned with an incomplete verdict. With the permission of all the attorneys, the jury revealed to the court those issues upon which it had reached unanimity. The jury unanimously found that Sun Oil had been negligent and that the members of the construction crew had not been contributorily negligent. Shortly thereafter, counsel for the plaintiffs and Sun Oil agreed to a settlement of $800,000, with the latter reserving its rights of indemnity against Texas Tanque. In a Memorandum, the district court found that Texas Tanque was re-

quired to indemnify Sun Oil in the amount of $300,000. Texas Tanque appealed, arguing that the district court erred in requiring it to indemnify Sun Oil, and Sun Oil cross–appealed on the ground that Texas Tanque should be required to indemnify the oil company for the entire amount of the settlement.

The indemnity provision contained in the Contract and Services Agreement involved in this case provided:

INDEMNITY: Contractor agrees to protect, defend, indemnify and hold Sun and the employees of Sun free and harmless from and against any and all claims, demands and causes of action of every kind and character (except underground damage) arising out of, incident to, or in connection with this agreement or performance of work or services hereunder or breach of the terms hereof, regardless of whether the liability therefor is based upon some alleged act or omission of Sun or of Contractor or of some third or other party, and including without limitation by enumeration all taxes, claims, debts, fines, penalties, forfeitures, patent infringements, loss of use, death, injury and damages to all persons and property, together with the amount of judgments, penalties, interest, court costs, legal and other fees and expenses in connection therewith. With respect to liability based upon some alleged act or omission of Sun or some such third or other party, not an agent or subcontractor of Contractor, this indemnity shall be limited to the kinds and amounts of insurance Contractor agrees to carry under this Contract and Services Agreement, or such greater amounts as Contractor does in fact carry, and further limited as may be required for compliance with applicable state and federal laws.

In another provision of the Contract and Services Agreement, Texas Tanque agreed to provide insurance for bodily injury up to $300,000.

The Texas courts, to which we must defer in this diversity case, have held that indem-

nity provisions are to be strictly construed and have all but adopted the express negligence rule requiring the provision to state, in so many words, that an indemnitee is held harmless for his negligent acts. *See Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex.1980); *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972). In *Fireman's Fund*, the Texas Supreme Court held that a contract of indemnity will not afford protection to an indemnitee against the consequences of its own negligent act unless that contract clearly expresses such an obligation in unequivocal terms. *Fireman's Fund*, 490 S.W.2d at 822.

 This holding has become known as the "clear and unequivocal" rule and has been considered by the Texas courts as the proper standard in interpreting indemnity provisions. *See Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d at 211; *Brownsville & Matamoros Bridge Co. v. Null*, 578 S.W.2d 774, 785 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n.r.e.); *Coastal Construction Co. v. Tex–Kote, Inc.*, 571 S.W.2d 400, 404 (Tex.Civ.App.–Waco 1978, writ ref'd n.r.e.). Broad general statements of indemnity obligations are usually not sufficient to protect indemnitees against their own negligence. *Fireman's Fund*, 490 S.W.2d at 822. The Supreme Court in *Fireman's Fund* listed certain exceptions which would allow indemnitees to be protected even in the face of broad general statements. One of these exceptions, which could be applicable in the present case, occurs when there is an unequivocal provision that the indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to the indemnitor's employees. *Id.* This exception, however, does not circumvent the clear and unequivocal rule. The exception merely eliminates the requirement that the provisions specifically refer to the indemnitee's own negligence. *Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d at 212. The determination of whether an indemnity provision clearly and unequivocally indemnifies an indemnitee must be made only after an examination and consideration of all the relevant provisions of the contract. *Fireman's Fund*, 490 S.W.2d at 822–23; Reynolds, *Contracts of Indemnity in Texas*, 43 Tex.B.J. 297, 298 (1980).

In the present case, we are faced with an indemnity provision that is extremely broad and general. There is no mention of the term "negligence." There is, however, a reference to the acts or omissions of Sun Oil, which possibly could include acts or omissions of negligence. Our interpretation in this case is rendered slightly less onerous due to a recent Texas appellate court decision which dealt with an identical indemnity provision. In *Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex.Civ. App.–Tyler 1978, writ ref'd n.r.e.), the contractor–indemnitor Renshaw had been performing well service work for Sun Oil. A Renshaw employee was hurt when his truck went off the road on an access road provided by Sun Oil. It was found that the accident occurred due to the negligence of Sun Oil in maintaining the access road. In that case, as in this, Sun Oil sought indemnity from the contractor. The court examined the indemnity provision, which is no different from Texas Tanque's, and assumed without deciding that the provision was intended to cover the negligent acts of Sun Oil relating to the work being performed by the contractor. *Id.* at 68.

Since we have donned the guise of a court sitting in the Texas state system, it would be difficult to overlook the approach taken by the court in *Renshaw*. As a Texas court, though, we could take that extra step reserved in *Renshaw* and hold definitively that such an agreement does bind the indemnitor for negligent acts of the indemnitee. Conversely, we could, in our right as a Texas appellate court, refuse to follow the holdings of another intermediate appellate court and interpret the contract as being too broad to encompass such liability. As always, the danger, or perhaps the blessing, of a federal appeals court interpreting state statutory and decisional law is that our ruling remains the law of that state until reversed by an appropriate court of that

state. Although we lean towards the latter option above, in light of certain case law, see, e.g., Chevron Oil Co. v. E.D. Walton Construction Co., Inc., 517 F.2d 1119 (5th Cir. 1975) (similar Texas indemnity contract held too ambiguous to indemnify employer for its own negligent acts), and in light of our doubts as to the clearness and unequivocalness of the parties' intentions, we find that we need not challenge the powers of the state courts of Texas. For reasons that will become apparent shortly we will do no more than the court did in Renshaw and assume without deciding that Sun Oil is indemnified in this case for its own negligent acts relating to the contractual work being performed.

Renshaw demonstrates that merely because Sun Oil might be indemnified for negligent acts does not denote that Texas Tanque would have to indemnify the oil company for all of its negligent acts. As the court in Renshaw held, once the intent of the parties regarding indemnity has been gleaned from the contract, the court will impose a strict construction upon that intent to prevent the indemnity obligation from being broadened beyond the terms of the agreement. Sun Oil Co. v. Renshaw Well Service, Inc., 571 S.W.2d at 68. See also Note, Contractual Indemnity Provisions, Hopefully Reclarified, 25 Baylor L.Rev. 543, 547 (1973). In other words, the court must determine which of the indemnitee's negligent acts are covered by the agreement.

In the instant case, the provisions indemnify Sun Oil for any and all claims "arising out of, incident to, or in connection with" the agreement or the performance of work or services under the agreement. The mere fact that an employee was on a worksite when injured does not necessarily answer the question of whether that injury arose out of or was incident to the performance of the work. Martin Wright Electric Co. v. W.R. Grimshaw Co., 419 F.2d 1381, 1384 (5th Cir. 1969), cert. denied, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970). Rather, all the surrounding facts and circumstances must be examined to determine whether the negligent act or omission had any connection with or relation to the performance of the work. Id. at 1385; Sun Oil Co. v. Renshaw Well Service, Inc., 571 S.W.2d at 69.

In the present case, the contract involved the extension of a walkway from two existing tanks to a third one recently positioned by Sun Oil. The jury found that Sun Oil had been responsible for the accident due to its negligence and that the members of the construction crew were not contributorily negligent. The members of the crew were performing their task in a safe manner when a newly added tank exploded. The contract under which Texas Tanque subcontracted the job to the construction crew involved only the construction of a walkway. The accident occurred due to conditions in a new tank of which neither Texas Tanque nor the construction crew knew anything. The negligence of Sun Oil was totally unconnected to the subject of the contract, the construction of a walkway. Although this may seem to be a rather restricted construction of the contract, we are only following the dictates and views of the courts of the state of Texas. See, e.g., Martin Wright Electric Co. v. E.D. Walton Construction Co., Inc., 419 F.2d at 1386–87 (Texas case in which electrical worker killed after tripping on wire mesh at work site held unrelated to work); Sun Oil Co. v. Renshaw Well Service, Inc., 571 S.W.2d at 71 (negligence of indemnitee in failing to properly maintain road unrelated to well service work); Brown & Root, Inc. v. Service Painting Co. of Beaumont, 437 S.W.2d 630, 634 (Tex.Civ.App. Beaumont 1969, writ ref'd) (negligence of employer in allowing bumper to fall on painter unrelated to contractual work); Westinghouse Electric Corp. v. Childs–Bellows, 352 S.W.2d 806, 808 (Tex.Civ.App. Fort Worth 1961, writ ref'd) (elevator installer injured by falling bricks caused by negligence of indemnitee unrelated to work). Cf. Richmond v. Amoco Products Co., 390 F.Supp. 673, 677 (E.D.Tex. 1975) aff'd, 532 F.2d 1373, 1374 (5th Cir. 1976) (defective work done by contractor earlier which caused subsequent accident to contractor was related to work).

Thus, under Texas law we hold that the accident in this case, which was due solely to the negligence of Sun Oil, did not arise out of, was not incident to nor related to the agreement or the performance of the work under the agreement. For this reason, Texas Tanque is not liable under the indemnity agreement to Sun Oil for the accident in this case.

Texas Tanque also challenges the settlement agreement itself and contends that the Contract and Services Agreement is void under Article 2212b of the Civil Statutes of Texas. Due to our holding, there is no longer a need to reach these issues nor the issue raised on Sun Oil's cross appeal. We, thus, reverse and remand the case to the district court to amend its judgment accordingly and to dismiss Texas Tanque from this action.

REVERSED AND REMANDED WITH DIRECTIONS.