Douglas A. **GREER**

v.

**SERVICES, EQUIPMENT AND ENGINEERING, INC.**

v.

**MARINE OFFSHORE CATERING COMPANY, INC.**

Civ. A. No. 83–805–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 12, 1984.

John Pearson, Susan Abrams, Clann & Pearson, Houston, Tex., for plaintiff.

Cleve Bachman, Howard Close, Orgain, Bell & Tucker, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

Before the Court is Third-Party Plaintiff Service, Equipment and Engineering, Inc.'s (SEE) Motion to enforce an indemnity agreement against Third-Party Defendant Marine Offshore Catering Company, Inc. (MOCCI) in this maritime personal injury case. After two days of trial, SEE, a drilling rig contractor and the original defendant, settled the main action of this suit for $65,000 and court costs. It now seeks to recover that amount under an indemnity clause contained in a master-service contract between it and MOCCI, its catering subcontractor.

The parties agreed to submit the indemnity issue to the Court, and submitted briefs. After a careful review of the briefs and the evidence presented, this Court finds the substantive law of Texas applies, and that under it the lack of connection between the injury and acts intended to be covered by the indemnity provision render the indemnity provision void.

## I. FACTS

This lawsuit arises out of a "doping incident" which occurred aboard SEE Rig No.

21, a fixed oil drilling platform located 10.4 miles off the coast of Texas. The Plaintiff, Doug Greer, was a cook for MOCCI, the company which provided cooking and cleaning for the SEE rig. Greer's duties included cooking, ordering supplies, and general maintenance.

Testimony at trial indicated that Greer was fond of playing pranks on the rig's crewmembers. For example, Greer was supposed to have put rubber in crew members' eggs and to have threatened to add "hot sauce" to their food. Apparently, the crewmembers decided to get even with Greer. On July 4, 1983, Greer went to the rig floor seeking some iron tongs to use as fishing weights. While he looked for the tongs, two crewmembers grabbed Greer from behind and rubbed Greer's stomach and genitals with pipe grease or "dope." Though perhaps his ego was bruised, this doping did nothing to physically harm Greer. Following the incident, however, Greer sought a way to wash off the dope. At trial, Greer testified that the crewmembers told him to use some nearby "rig-wash", a fact the crewmembers denied. In any case, Greer did use the wash, and the chemicals in the liquid burned him so badly that he was taken off the rig and given medical attention in Victoria, Texas. A short time later, he bought this lawsuit, and made a recovery through settlement.

## II. ISSUES PRESENTED

Greer, a MOCCI employee, was working on the SEE rig pursuant to a master-service contract containing an indemnity provision. By the provision, MOCCI agrees to "indemnify and hold harmless drilling contractor" for claims for damages to persons "... including those brought by subcontractor's employees ... incident to, arising out of, in connection with or resulting from the activities of subcontractor, its employees and agents ... or in connection with the work to be performed ... whether occasioned, brought about or caused in whole or in part by the negligence of drilling contractor ..." [1]

This, then, is a contract that allows a party—the drilling contractor—to indemnify himself for his own negligence. The contract applied to work to be done on a drilling rig on the Outer Continental Shelf, and thus, the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et seq (Supp. 1983) (OCSLA) applies. The application of the indemnity provision under OCSLA poses two questions for the Court. First, under OCSLA, what law should be applied: federal common law or state law (and if state law, the law of which state)? Second, assuming a choice of law has been made, can the indemnity provision stand up under that law?

## III. THE CHOICE OF LAW

### A. *Federal or State?*

■ Since this case is governed by OCS-LA, a compelling argument can be made that federal maritime law should apply.

---

**1.** The provision reads in full:

Subcontractor agrees to *indemnify and hold harmless* Drilling contractor from and against any and all liens and claims for labor or material, and against any and all claims, demands, or suits for *damages to persons* and/or property (including, but not limited to claims, demands, or suits for bodily injury, illness, disease, death, loss of services, maintenance, cure, property or wages), which may be brought against Drilling Contractor (including, *but not limited to those brought by Subcontractor's employees and agents and the agents and employees of its subcontractors*) incident to, arising out of, in connection with, or resulting from the activities of Subcontrac-

tor, its employees and agents, or its subcontractors and their employees and agents, or in connection with the work to be performed, services to be rendered, or material to be furnished, under this contract, or under contracts referred to in 1(b) above, whether occasioned, brought about or caused in whole or in part by the negligence of Drilling Contractor, its agents, directors, officers, employees, servants or subcontractors, or otherwise, or by the unseaworthiness of any vessel owned, operated or controlled by Drilling Contractor, regardless of whether such negligence or unseaworthiness be active or passive, primary or secondary.

The seminal case in determining what law applies under OCSLA is *Rodrique v. Aetna*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). In that case, the Supreme Court ruled that fixed drilling rigs on the Outer Continental Shelf were "artificial islands" to be treated as if they were "federal enclaves" within a state. *Id.* at 355, 89 S.Ct. at 1837. In determining what law applies to this unique situation, *Rodrique* instructed lower courts to apply the law of the state adjacent to those offshore rigs "to the extent that these [state laws] are applicable and not inconsistent with other federal laws." *Rodrique*, 395 U.S. at 357, 89 S.Ct. at 1838.

This issue of whether state law is inconsistent with federal law is important, because at least one federal court has held that federal law pre-empts the application of state law in this situation. In *Doucet v. Gulf Oil Co.* (No. 82–4818) (E.D.La. May 16, 1984), the United States District Court for the Eastern District of Louisiana found an irreconcilable conflict between federal law and a Louisiana anti-indemnity statute. As in the instant case, the suit involved an indemnification clause which allowed a party to indemnify itself against its own negligence. Under Louisiana law, the clause would be invalid. Based on the authority of *U.S. v. Seckinger*, 399 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), however, the Court held that federal common law allowed this type of indemnification, as long as the parties' intent is clear and unequivocal. *See id.* at 212 n. 17, 90 S.Ct. at 886 n. 17. Under *Rodrique*, the Court held the Louisiana statute was inconsistent with federal law, and had to give way.

This Court reads *Seckinger* differently. *Seckinger* was concerned with a federal construction contract. The contract involved a government project, and had been entered into with the government pursuant to the authority of a federal statute. *See Seckinger*, 397 U.S. at 209–10, 90 S.Ct. at 884–885. It appears the *Seckinger* contract was a purely federal one, and it seems doubtful to this Court that *Seckinger* can be read as fashioning a general federal common law rule for the interpretation of purely private contracts. This Court's reading of *Rodrique* indicates that it will be the exception and not the rule when state law does not apply under OCSLA. *See also Chevron Oil Company v. Huson*, 404 U.S. 97, 103–04, 92 S.Ct. 349, 353–354 (1971). (Federal courts should not create interstitial federal common law when Congress has directed that state law should apply). *Cf. Butler v. United States*, 726 F.2d 1057, 1064 (5th Cir.1984) (Indemnity clause controlled by federal law as the contract containing clause was entered into under federal law). Therefore, under *Rodrique*, the law of the adjacent state must apply.

**B. *Texas or Louisiana Law?***

■ Having decided that state law should apply, it becomes necessary to decide which state's substantive law controls. *Rodrique* mandates that the law of the adjacent state, Texas, applies. The Defendant has made an appealing argument that in applying Texas law, the Court should apply Texas' choice of law rules for contracts. Under that rule, MOCCI argues, Texas' conflicts rule would direct that Louisiana's substantive law should apply because the contract has little connection with Texas.[2]

This argument must fail. In *Chevron Oil Company v. Huson, supra*, the Supreme Court ruled that a state's conflict of laws rules have no relevance in an OCSLA case when a federal court is applying adjacent state law as surrogate federal law. *See Chevron*, 404 U.S. at 102–03, 92 S.Ct. at 353–354. *Chevron* indicated that a federal court applying state law under OCSLA was "not ... applying the state law of *another* forum in the usual sense," *id.*, but making the state law become "federal law federally enforced." *Id.* Since Texas is

---

**2.** The Court believes that this argument has some merit. The contract was executed in Louisiana by two Louisiana companies. There is no connection between it and Texas except for the fact the drilling rig was off the coast of Texas. Yet the terms of *Chevron* seem clear that it is Texas law that must apply.

the adjacent state, Texas substantive law must be applied as surrogate federal law.

## IV. IS THE CLAUSE VALID UNDER TEXAS LAW?

While Texas, as well as Louisiana, has an oilfield anti-indemnity statute prohibiting indemnification for one's own negligence, the Texas statute will allow such a practice if certain insurance guarantees are followed. See *Tex.Rev.Civ.Stat.Ann.* Art. 2212(b) (Supp.1984). This insurance requirement seems to have been followed here. The only question then is whether the indemnity provision here can be applied to cover Greer's injury.

■ Under the terms of the indemnity clause, the injury must have been "incident to, arising out of, or resulting from the activities of" MOCCI, or "in connection with the work to be performed." The "arising from ... in connection with" language in this clause is standard language; ånd because of that a body of Texas case law has arisen concerning the wording. It is quite clear that just because an employee was at work or on a worksite when injured does not necessarily mean the injury arose out of or was incident to the performance of the employee's work. All the surrounding facts and circumstances must be examined to determine whether the negligent act had any connection with or relation to the performance of the work. *McClane v. Sun Oil*, 634 F.2d 855, 858 (5th Cir.1981). *See also Martin Wright Electric Co. v. W.R. Grimshaw Co.*, 419 F.2d 1381 (5th

Cir.1969); *Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex.Civ.App. 1978 *writ ref'd n.r.e.*) Furthermore, Texas courts, after determining the intent of the parties regarding indemnity should "impose a strict construction upon that intent to prevent the indemnity obligation from being broadened beyond the terms of that agreement." *McClane v. Sun Oil Co.*, 634 F.2d at 859.

■ Greer was a cook on SEE Rig No. 21. At the time the injury occurred, he was off-duty, and had gone up to the rig floor (where he was not permitted to go) to find some fishing gear. He was assaulted by SEE employees, and injured when, as a result of that assault, he used the rig wash to cleanse himself.

None of these facts indicate the injury was incident to MOCCI's work as a subcontractor of food supplies. An examination of Texas case law reveals several factual situations where indemnity provisions have been voided in situations involving a greater connection between the work and injury. In many of these cases, the employee was actually involved in his work when the accident occurred.[3] SEE argues that these cases cover indemnity agreements where only *work* related incidents were contemplated. Here, SEE states, the clause provided for indemnification for the "activities" of MOCCI's employees. Since Greer was engaged in an off-duty recreational "activity"—fishing—when the accident occurred, the injury was within the scope of the indemnity clause. In addition, or alter-

---

**3.** *See e.g. McClane v. Sun Oil*, 634 F.2d 855 at 859, where the court states that though it seems to follow a "rather restricted construction of the contract" it was "only following the dictates and views of the courts of the State of Texas." *Id.* The *McClane* Court cited *Martin Wright Electric Co. v. W.R. Grimshaw Co.*, 419 F.2d 1381 (5th Cir.1969) where in a Texas diversity case the court held that an electrical worker killed after tripping on wire mesh at a work site was killed in an accident unrelated to his work. The court also cited *Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex.Civ.App.1978, *writ ref'd n.r.e.*) where a party's negligence in maintaining a road was unrelated to well service work. In *Brown and Root, Inc. v. Service Painting Co. of Beaumont*, 437 S.W.2d 630 (Tex.Civ.App.1969

*writ ref'd* ), also cited in *McClane*, the negligence of an employer in allowing a bumper to fall on a painter was held unrelated. In *Westinghouse Electric Corp. v. Childs-Bellows*, 352 S.W.2d 806 (Tex.Civ.App.1961, *writ ref'd* ) the court held that an injury caused by the negligence of a party in allowing bricks to fall on an elevator installer was unrelated to contractual work. In *McClane* itself the 5th Circuit held that indemnity was not warranted when a tank exploded and injured some construction workers building a walkway on the tank. *McClane*, 634 F.2d at 859–60. Given this background, it would take a leap of faith to hold that an off-duty cook who had gone onto a rig floor to find fishing gear was doing something in relation to his work.

**1080**

natively, SEE argues that Greer's injury arose out of his employment because his "horseplay" as cook provoked retaliation from SEE crewmembers.

■ Both arguments fail. At best, the clause concerning "activity" of the subcontractor is ambiguous. It does not clearly define what, if any, "activities" were meant. To allow the indemnity provision to be enforced on this basis would do violence to the Texas doctrine of strict construction of these agreements. Texas requires that indemnity provisions contain "clear and unequivocal" language concerning their obligations. Broad interpretations are disfavored. *See Fireman's Fund Ins. Co. v. Comm. Standard Ins. Co.*, 490 S.W.2d 818 (Tex.1972). *See also Eastman Kodak Company v. Exxon Corporation*, 603 S.W.2d 208 (Tex.1980); *Sun Oil Company v. Renshaw, supra.* Since this Court cannot determine what activities are meant, it cannot determine what the parties intended. In this situation, Texas law directs us to void the provision.

Greer's "doping" may have resulted from his horseplay while a cook. But to say that his horseplay was a proximate cause of his injury stretches the chain of causation too far. The act of negligence occurred here when the SEE crewmembers either told Greer to use the rig wash or failed to stop him from doing so. The injury was not occasioned by the "doping" itself. The negligence was too remote to be connected with Greer's horseplay. This is especially true in light of the Texas cases cited above which require a narrow construction of what will be considered as "arising out of" a subcontractor's work.

In the final analysis, the clause fails because it violates the public policy behind the statutory and jurisprudential provisions restricting indemnity clauses. The restrictions are designed to make the party responsible for the negligence pay for it itself, and thus encourage that party's due care. By limiting a party's ability to indemnify itself in this circumstance, the restrictions encourage safe working practices and conditions, which are especially needed in the oil industry and on oil rigs.

SEE is responsible for ending the practices that led to Greer's injury. It would seem to defy common sense to expect that its caterer could do anything to prevent them. It is SEE, then, that must bear the burden of this accident.

## V. CONCLUSION

It is therefore ORDERED, ADJUDGED AND DECREED that SEE's Motion to enforce the indemnity agreement is DENIED, and that judgment should be and is hereby entered for Third-Party Defendant MOCCI and against Third-Party Plaintiff SEE.