CONOCO, INC.

v.

MEDIC SYSTEMS, INC., et al.

No. CIV.A. 6:99–626.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

July 31, 2000.

John A. Jeansonne, Jr., Donald R. Washington, George A. Veazey, Jeansonne & Remondet, Lafayette, LA, for the plaintiff, Conoco, Inc.

Robert M. Kallam, Preis, Kraft & Roy, Lafayette, LA, for defendant, Grasso Production, Inc.

Gerald Gaudet, S. Brian Perry, Voorhies & Labbe, Lafayette, LA, for defendants, Medic Systems, Inc., PPI–Seahawk Services, Inc. and Offshore Logistics, Inc.

Breaud represents Ensco Offshore Company, the defendant and third-party plaintiff.

I. Matthew Williamson, Miller & Williamson, New Orleans, LA for Centin L.L.C., third-party defendant.

## MEMORANDUM RULING

MELANCQN, District Judge.

Before the Court are cross motions for summary judgment filed by plaintiff Conoco, Inc. and defendants Medic Systems, Inc., Grasso Corporation, Grasso Production Management, Inc., PPI–Seahawk Services, Inc. and Offshore Logistics, Inc. For the following reasons, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.

### Background

Plaintiff Conoco, Inc. brought this action to recover attorneys fees and costs from a law suit brought against Conoco by the representative of Lonna Herronen, a deceased employee of Medic Systems, a division of PPI–Seahawk, styled *Ricky L.*

*Hetchler, Individually and as Executrix of the Estate of her daughter, Lonna Herronen v. Conoco, Inc.*, civil action no. 96–2208 ("*Hetchler*"). In *Hetchler*, the plaintiff sought damages against Conoco resulting from an alleged workplace assault, battery, or rape and wrongful death pursuant to theories of negligence, strict liability and vicarious liability. *Id.* At the conclusion of Hetchler's case-in-chief, the Court granted judgment as a matter of law dismissing the vicarious liability and strict liability claims with prejudice. *Id.* The jury rendered a verdict finding that Herronen had been "assault[ed], batter[ed] or rape[ed]" but that Herronen's injuries, and Hetchler's damages, were not caused by Conoco's negligence. Judgment[1] was entered in favor of Conoco and upheld by the Fifth Circuit. *Id.*

On February 28, 1991, Conoco and PPI–Seahawk Services, Inc. entered into a blanket contract, number LBCC–167, in which PPI–Seahawk agreed to provide certain services to Conoco to its offshore platforms.[2] *(Conoco's Motion, Undisputed Fact Nos. 15 & 17, Exh. F; R. 13, Exh. A).* Following the *Hetchler* trial, Conoco made demand on defendants for defense and indemnity based on the Conoco/PPI–Seahawk blanket contract. *(Conoco's Motion; Defendants' Motion).* Defendants denied Conoco's demand. Conoco filed this action seeking defense and indemnification for all costs incurred in the *Hetchler* litigation including, but not limited to, attorney's fees and expenses.

### Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### Analysis

The question of defendants' indemnification of Conoco for the costs incurred by Conoco in defending the *Hetchler* litigation is one involving contractual indemnification. "A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981). The issue this Court must resolve is whether the Conoco/PPI–Seahawk indemnification agreement is implicated in the *Hetchler* litigation, involving the intentional and/or

1. The Court entered an Amended Judgment granting, among other things, Conoco's motion for summary judgment regarding Herronen's borrowed servant status.

2. Grasso Production Management, Inc. is responsible for the contractual obligations of PPI–Seahawk Services, Inc. and Medic Systems to the extent that such entities are held responsible for indemnification and defense obligations under any contract with Conoco. *(R. 12, Joint Status Report).*

criminal acts, the "assault, battery or rape," of defendants' employee, Lonna Herronen.

The indemnity provision in the Conoco/PPI–Seahawk blanket contract provides in part,

> "[PPI–Seahawk] agrees to indemnify and hold harmless [Conoco]...against any and all claims, demands, or suits (including, but not limited to, claims, demands, or suits, for bodily injury, illness, disease, death, or loss of services or wages) which may be brought against [Conoco]...**in any way arising out of or incident to the Work,** irrespective of whether such suits are based on the relationship of master and servant, third party, or otherwise, and **even though occasioned, brought about, or caused in whole or in part by the negligence or fault of [Conoco]....or by conditions, acts or omissions (whether or not in whole or in part the responsibility of or occasioned by the negligence or fault of [Conoco]) which impose strict liability.** [PPI–Seahawk] further agrees to have any such claim, demand, or suit investigated, handled, responded to and defended at no cost to [Conoco]...even if such claim, demand, or suit is groundless, false or fraudulent." (emphasis supplied).

*(Conoco's Memorandum in Support of Cross Motion for Summary Judgment,* Exh. E, ¶ IV).

In its motion for summary judgment, Conoco contends that defendants are obligated by the terms of the blanket contract to provide Conoco attorney fees and costs incurred in the *Hetchler* litigation. In denying that they owe defense and indemnity to Conoco in this matter, defendants assert that the *Hetchler* litigation arose from intentional and/or criminal acts of Conoco's employees or the employees of Conoco's subcontractors rather than from the negligence of those employees. Defendants argue that Conoco's claim for indemnification under the contract should be denied because (1) the intentional and/or criminal acts of the employees and the resulting injury to Lonna Herronen did not arise out of and was not incident to the performance of Herronen's work, as required by the language of the indemnity provision, and (2) the indemnity provision does not expressly provide for indemnification based on intentional and/or criminal acts of the indemnitee's employees.

To support the contention that defendants are not obligated to indemnify Conoco under the terms of the blanket agreement because Lonna Herronen's "assault, battery or rape" did not arise out of and was not incident to the performance of her work, defendants cite *Greer v. Services, Equipment and Engineering, Inc.,* 593 F.Supp. 1075, 1079 (E.D.Tx.1984). Conoco argues that *Greer* interprets Texas law and is therefore neither precedent nor persuasive authority in this case. While it is axiomatic that a case involving the interpretation of Texas law by another district court is not precedent, the court's reasoning in *Greer* is instructive in the determination of this matter.

In *Greer,* the lawsuit arose out of a "doping" incident which occurred on a fixed oil drilling platform located off of the coast of Texas. The plaintiff, a cook for the subcontractor which provided cooking and cleaning services for the drilling rig, had played practical jokes on the drilling rig's crewmembers. In retaliation for plaintiff's practical jokes on them the crewmembers grabbed the plaintiff from behind and rubbed his stomach and genitals with pipe grease or "dope." In an attempt to cleanse the dope from his body, the plaintiff used "rig-wash" at the suggestion of the crewmembers. The chemicals in the rig-wash badly burned the plaintiff. Plaintiff filed suit against the drilling rig owner who filed a third party action against the plaintiff's employer for indemnity under the master-service agreement between the drilling rig contractor and the plaintiff's employer. As plaintiff ultimately recovered for his injuries through settlement, the only issue remaining before the

court was interpretation of the indemnification clause in the master-service agreement between the parties.

The indemnity provision in *Greer* required the plaintiff's employer to "indemnify and hold harmless drilling contractor for claims for damages to persons ... including those brought by subcontractor's employees ... incident to, arising out of, in connection with or resulting from the activities of subcontractor, its employees and agents ... or in connection with the work to be performed ... whether occasioned, brought about or caused in whole or in part by the negligence of drilling contractor ...." *Greer*, 593 F.Supp. at 1077. Based on the language of the indemnity clause, the court held that in order for the rig contractor to receive indemnification the plaintiff's injuries must have been "incident to, arising out of, or resulting from the activities of" the subcontractor or "in connection with the work to be performed." Applying Texas law as to the interpretation of whether the plaintiff's injury arose from his employment, the court reasoned that because at the time of his assault the plaintiff was off-duty and had gone up to the rig floor to find some fishing gear, the plaintiff's resulting injury was not sufficiently connected to his work and the indemnity clause was not applicable.

Defendants do not cite, and the Court is unaware of, any Louisiana jurisprudence in support of their position that an employee injury stemming from an intentional or criminal act, such as the "assault, battery or rape" in this case, does not "arise out of" nor "is incident to" the employee's work.[3] Louisiana courts have considered, however, whether or not such injuries "arise out of" an employee's work in the context of workers compensation. *Mundy v. Department of Health and Human Resources*, 593 So.2d 346 (La.1992), contains the Louisiana Supreme Court's most recent decision as to that issue.

In *Mundy*, a licensed practical nurse on her way to report to work at a hospital was stabbed by an unknown assailant in an elevator at the hospital. Mundy entered the hospital on the first floor and proceeded to the east bank of elevators, one of which would take her to her work station on the eleventh floor. As the elevator doors were closing, an unidentified man jumped in the elevator and pushed the button for the second floor. As he was about to exit the elevator on the second floor, he turned back toward Mundy and attacked her with a knife. Mundy sued her employer in tort. The court held that Mundy's injury neither arose out of her employment nor occurred in the course of her employment[4] by the hospital, and allowed her tort claim to proceed.

"The determination of whether an accident arises out of [plaintiff's] employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Moreover, an accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred." *Mundy*, 593 So.2d at 349. (citations omitted).

---

3. Defendants contend that the issues in question are of first impression and there is no binding legal precedent which is applicable.

4. The *Mundy* court further determined that the plaintiff was not "in the course" of employment because she was in a public area and was not under the supervision and control of her employer. *Mundy*, 593 So.2d at 349. "The principal criteria for determining course of employment are time, place and employment activity." *Id.* As the indemnification provision in question specifically provides for coverage when the claim is "in any way arising out of or incident to the Work" of the employee, the Court will consider only the "arising out of" analysis as it applies to the instant case.

The *Mundy* court determined that the risk which gave rise to the injury was not greater for Mundy than for a person not so employed. *Id.* at 350. While the conditions of the employment arguably caused Mundy to be at the place of the attack at the time the attack occurred, there were other alternative routes for her to reach her work station. *Id.* In finding that the "arises out of employment" inquiry was not met, the court stated that "the risk which gave rise to the injury was a neutral risk that was not related either to plaintiff's employment or to her personal life." *Id.*

The Fifth Circuit applied the analysis of *Mundy* in *Harris v. Wal–Mart Stores, Inc.*, 205 F.3d 847, 850 (5th Cir.2000) where the plaintiff was injured when a fellow employee who was stocking the store shelves negligently dropped a box on her. The court determined that the plaintiff's injuries arose out of plaintiff's employment because the fellow employee's presence and activity which caused the injury "was fully anticipatable." *Harris,* 205 F.3d at 850. In analogizing the fellow employee's presence and activity to "a physical defect in the premises of the employer," the court stated that, "[a] physical defect in the premises of the employer is very different from an independent random act of violence committed by an unrelated third party stranger. A random act of violence could occur anywhere, but a defect in the premises at the place of employment is 'peculiar and distinctive' to that location." *Id.*

■ In the incident at issue, the jury found that while Lonna Herronen was asleep in her living quarters on the Conoco platform she was "assault[ed], batter[ed] or rap[ed]" by unknown assailants. *Hetchler, Jury Verdict Form.* Although the jury determined that the assault was not caused by any negligence on the part of Conoco as the owner of the drilling rig, a determination was made that an intentional and/or criminal act was committed against Herronen on Conoco's drilling rig.

That is, the evidence showed that the assault was a random act of violence for which Conoco was not at fault.

Applying the holdings of *Mundy* and *Harris,* the "assault, battery or rape" of Herronen did not arise from Herronen's employment. Rather, the assault constituted a random act of violence which could have occurred anywhere. *Harris,* 205 F.3d at 850. Conoco argues that because Herronen was on the platform only for the purpose of performing services related to her employment contract the assault must have arisen from her employment. Conoco's argument, however, would obliterate the "arises from" or "incident to" language in the indemnification agreement as any injury occurring on the platform would be included in the indemnity agreement.

In addition to the previous argument that the injury did not "arise from" nor "was incident to" Herronen's employment, defendants analogize this case to contracts of indemnity by which the indemnitee is indemnified against the consequences of his own negligence. Defendants assert that if Conoco intended the defendants to defend and indemnify it for the intentional and/or criminal acts of its employees or the employees of its other subcontractors working on its offshore platform, it should have included specific language to that effect in the agreement. Because there was not such language, defendants argue that the terms of the indemnification agreement are unclear and equivocal.

■ A contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms. *Corbitt,* 654 F.2d at 333. Under Louisiana law, contracts of indemnity by which the indemnitee is indemnified against the consequences of his own negligence are strictly construed. *Home Insurance Co. v. National Tea Co.,* 588 So.2d 361, 364 (La. 1991). A contract will not be construed to indemnify an indemnitee against loss re-

sulting from the indemnitee's negligence acts unless such an intention is expressed in unequivocal terms. *Id.* When the intent of the parties remains unclear and equivocal after interpreting the provisions of the contract as a whole, a presumption arises that the parties did not intend to hold the indemnitee harmless from the result of its own negligence. *Id.* at 364.

■ While Conoco argues that the provision at issue should be construed to require indemnity because Conoco was not found to be at fault or otherwise legally responsible for Lonna Herronen's injuries, Conoco's fault or negligence is not at issue in this matter. Rather, as previously stated, the Court must determine whether or not the language in the indemnity provision covers the intentional and/or criminal acts of Conoco's employees or Conoco's subcontractor's employees working on the drilling rig. The Court finds that the language of the indemnity provision does not unequivocally express that defendants are required to indemnify Conoco for intentional or criminal acts of Conoco employees or of Conoco's subcontractors' employees who are working on the drilling rig.

"A contract of indemnity constitutes the law between the parties and its terms will be enforced as written unless they run counter to law or violate well-defined public policy or good morals. The terms, provisions, and conditions of contract of indemnity will be enforced as written unless they run counter to law or violate well-defined public policy or good morals." *Fidelity & Deposit Co. of Maryland v. Thieme,* 193 So. 496 (La.App.2d Cir.1940); *See also Chiasson v. Rogers Terminal and Shipping Corp.,* 679 F.2d 410, 415 (5th Cir.1982). "It is clear that Louisiana public policy disfavors agreements involving indemnity to the extent of requiring that they be strictly construed, and an agreement purporting to prospectively relieve another of liability for an intentional tort is void even though it may not involve corporal injury." *Diamond Crystal Salt Company v. Thielman,* 395 F.2d 62, 65 (5th Cir.1968), *citing Hayes v. Hayes,* 8 La. Ann. 468 (1852). In the final analysis, any language in the indemnification clause at issue which could be construed to require defendants to indemnify Conoco for the "assault, battery or rape" of Lonna Herronen in the *Hetchler* litigation at issue would violate public policy and is considered null and void. *See Greer,* 593 F.Supp. at 1080.

### Conclusion

The "assault, battery or rape" of Lonna Herronen did not arise from nor was incident to Lonna Herronen's employment and the indemnification provision in the Conoco/PPI–Seahawk blanket contract does not cover the attorney fees and costs incurred in the *Hetchler* litigation. Further, the language of the PPI–Seahawk indemnity provision does not unequivocally require to defendants to indemnify Conoco for injuries incurred by the intentional and/or criminal acts of the employees of Conoco or the employees of its other subcontractors working on its offshore platform. Finally, any reading of the indemnification provision which finds that defendants must indemnify Conoco for the intentional and/or criminal acts in question would be against public policy.

### JUDGMENT

In accordance with the Memorandum Ruling issued on this date,

IT IS ORDERED that the Motion for Summary Judgment filed by Conoco, Inc. [Rec. Doc. 18] is denied and the Motion for Summary Judgment filed by defendants Medic Systems, Inc., Grasso Corporation, Grasso Production Management, Inc., PPI–Seahawk Services, Inc. and Offshore Logistics, Inc. [Rec. Doc. 13] is granted and this matter is DISMISSED WITH PREJUDICE.