749 F.2d 635
 STEWART & STEVENSON SERVICES, INC., Plaintiff-Appellant,
Cross-Appellee,
v.
Rod PICKARD, et al., Defendants,
Marine Dynamics Corp., Defendant-Appellee, Cross-Appellant.
MARINE DYNAMICS CORP., Plaintiff-Appellee, Cross-Appellant,
v.
STEWART & STEVENSON SERVICES, INC., Defendant-Appellant,
Cross-Appellee,
Detroit Diesel Allison, Etc., et al., Defendants.
 No. 83-5132.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 26, 1984.
 
 Haddad, Josephs & Jacks, Michael R. Josephs, Gilbert A. Haddad, Coral Gables, Fla., Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadows & Olin, P.A., Joel S. Perwin, Atty., Miami, Fla., for Marine Dynamics Corp.
 Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., A. Rodger Traynor, Jr., Miami, Fla., John L. McConn, Jr., Houston, Tex., for Stewart & Stevenson Services, Inc.
 Appeals from the United States District Court for the Southern District of Florida.
 Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 This appeal involves numerous challenges to a jury verdict in favor of appellee Marine Dynamics Corporation (Marine Dynamics) assessing damages in the amount of $10,590,000.00 and the judgment entered thereon. For the following reasons, we affirm in part, reverse in part, and remand with directions to order a remittitur.
 
 
 2
 Appellant Stewart & Stevenson Services, Inc. (Stewart & Stevenson) of Houston, Texas, is a franchised distributor of diesel engines manufactured by the Detroit Diesel Allison Division of General Motors (DDA). In addition to selling standard, off-the-shelf DDA engines, Stewart & Stevenson also sells DDA engines which it has modified into higher horsepower, high performance engines for special purposes.
 
 
 3
 Appellee Marine Dynamics of Miami, Florida, owned and operated by Rod and Joan Pickard, had supplied boats to the countries comprising the United Arab Emirates (UAE) since 1974. On October 1, 1978, Marine Dynamics submitted a formal written offer to furnish fourteen patrol boats to the UAE for use by its Coast Guard. The offer specified that a modified DDA engine capable of 650 horsepower or a similar German MTU engine would serve as the main propulsion system for these boats.
 
 
 4
 Pursuant to a written contract dated November 30, 1978, Marine Dynamics purchased 34 modified DDA engines rated at 650 horsepower from Stewart & Stevenson. These engines were to serve as the main propulsion systems for the fourteen patrol boats to be supplied by Marine Dynamics to the UAE.
 
 
 5
 Marine Dynamics began delivery of the boats to the UAE in August of 1979. From the date of the first delivery, the modified DDA engines purchased from Stewart & Stevenson and installed in the patrol boats failed to function properly. The UAE blamed Marine Dynamics for this failure and prohibited its representatives from entering the UAE countries. No sales were made by Marine Dynamics to the UAE after August of 1979.
 
 
 6
 Based on these primary facts of engine malfunction and the resulting loss of the UAE business, Marine Dynamics filed suit against Stewart & Stevenson in the United States District Court for the Southern District of Florida.[1] Pertinent to this appeal, Marine Dynamics sought recovery for Stewart & Stevenson's claimed negligence, gross negligence and fraud in connection with the modification and sale of the engines. The parties stipulated that the law of Texas governs these claims.
 
 
 7
 At trial, Marine Dynamics presented evidence in support of its theory that the engines malfunctioned because Stewart & Stevenson assumed, without testing and in defiance of DDA guidelines, that it could increase the horsepower of the engines to a rating of 650 by substituting 140 millimeter fuel injectors instead of the standard recommended 115 millimeter injectors. According to Marine Dynamics, the engines were not capable of carrying that large a fuel injector without systemic engine breakdown and damage to engine parts and Stewart & Stevenson was aware of, chose to disregard, and sought to conceal this fact in order to obtain and keep the contract for the engines. Stewart & Stevenson defended on the grounds that the engines malfunctioned because Marine Dynamics equipped the boats with oversized propellers, the UAE abused the engines, and the temperature in the UAE was too hot for the maximum functioning of the engines. Under its fraud theory, Marine Dynamics identified four statements made by Stewart & Stevenson representatives it claimed constituted misrepresentations inducing it to enter into the contract for the purpose of the engines.
 
 
 8
 The district court denied Stewart & Stevenson's motions for directed verdict on the claims of negligence, gross negligence and fraud. Utilizing a special verdict form containing eleven interrogatories, the jury found in favor of Marine Dynamics on these claims.[2] Compensatory damages for lost profits, loss of good will, damage to reputation, and repairs of $5,190,000.00 and punitive damages of $5,400,000.00 were assessed by the jury. The district court entered judgment in accordance with the jury's verdict. Ruling on Stewart & Stevenson's motion for judgment notwithstanding the verdict, the district court issued an amended final judgment striking the punitive damages award in its entirety.
 
 
 9
 Stewart & Stevenson appeals, challenging on various grounds both the liability and compensatory damages portions of the verdict and judgment. Marine Dynamics cross-appeals, claiming that the district court erred in striking the punitive damages award. We consider these contentions first in relation to liability and second in relation to the assessment of damages.
 
 I. LIABILITY
 A. Negligence
 
 10
 Stewart & Stevenson claims that Texas law does not recognize a negligence or gross negligence cause of action based on economic loss resulting from damage to the purchased product itself. It maintains that such a loss is recoverable only under the remedies provided by the Texas Uniform Commercial Code. In support of this argument, Stewart & Stevenson relies on the well-established Texas rule that a strict liability cause of action under Section 402A of the Restatement (Second) of Torts will not lie for recovery of this type loss: "in transactions between a commercial seller and a commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code." Mid Continent Aircraft v. Curry City Spraying Service, 572 S.W.2d 308, 313 (Tex.1978); see also Signal Gas & Oil v. Universal Oil Products, 572 S.W.2d 320, 325 (Tex.1978); Two Rivers Co. v. Curtiss Breeding Service, 624 F.2d 1242, 1247 (5th Cir.1980) (Texas law).[3] Since both Stewart & Stevenson and Marine Dynamics are commercial entities, and the only evidence of loss in this case is from injury to the defective products, the engines themselves, absent any physical injury to persons or other property, Stewart & Stevenson contends that the district court erred, as a matter of Texas law, in submitting Marine Dynamics' negligence and gross negligence claims to the jury and in entering judgment thereon.
 
 
 11
 Stewart & Stevenson's reliance in this negligence action on the rule of the Texas strict liability cases concerning the recovery of economic loss is misplaced. The Texas Supreme Court has recognized a crucial and in this case dispositive distinction between the recovery of economic loss in strict liability and negligence actions:
 
 
 12
 We hold that [the plaintiff] may not recover his economic loss under section 402A of the Restatement (Second) of Torts but may recover such loss under the implied warranties of the Uniform Commercial Code and the theory of common law negligence.
 
 
 13
 Nobility Homes v. Shivers, 557 S.W.2d 77, 78 (Tex.1977).
 
 
 14
 Nobility Homes is clearly controlling on the facts of the present case: a plaintiff, Marine Dynamics, seeking recovery of economic loss, damage to the defective products, the engines themselves, is relegated under Texas law to a negligence, as well as a Uniform Commercial Code, remedy.
 
 
 15
 Stewart & Stevenson has presented no authority to this Court that would indicate that the Texas court would reconsider or retreat from its holding[4] concerning the recovery of economic loss under a negligence theory in Nobility Homes. The lower Texas courts' and the former Fifth Circuit's interpretations of Nobility Homes are to the contrary. See Lockwood Corp. v. Spencer, 613 S.W.2d 369, 370 (Tex.Civ.App.1981); Two Rivers Co., supra, at 1246. We therefore hold that under Nobility Homes a cause of action for negligence was clearly available to Marine Dynamics and, accordingly, the district court did not err in submitting Marine Dynamics' negligence and gross negligence claims to the jury and in entering judgment thereon.
 
 B. Fraud
 
 16
 Stewart & Stevenson contends that the district court committed reversible error in failing to submit to the jury special interrogatories on two essential elements of a common law fraud claim under Texas law: (1) reliance and (2) intent to induce reliance.[5] Marine Dynamics responds by claiming that Stewart & Stevenson failed to demand submission of these issues to the jury and thus waived its right to trial by jury on these issues under Fed.R.Civ.P. 49(a).[6] We hold that Stewart & Stevenson did not waive its right to trial by jury on the omitted issues, and that the district court erred in refusing to submit special interrogatories to the jury on the Texas common law fraud elements of reliance and intent to induce reliance.
 
 
 17
 The former Fifth Circuit has recognized two methods of preserving a claim of error concerning the submission of a special interrogatory to the jury: a party may either propose and be denied a special interrogatory or may object to a proposed special interrogatory before the jury retires. Huddleston v. Herman & MacLean, 640 F.2d 534, 550 (5th Cir.1981); see also Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1171 (5th Cir.1982). The underlying purpose of both methods is to require a party to demand submission of an omitted issue to the jury in accordance with Rule 49(a) by "direct[ing] the court's attention to that issue." Id. In this case, the record is clear that Stewart & Stevenson, by a combination of these methods, directed the district court's attention to the omitted issues of reliance and intent to induce reliance and thus demanded submission of those issues to the jury.
 
 
 18
 At the charge conference at trial, Marine Dynamics and Stewart & Stevenson submitted to the district court proposed written interrogatories in the form of a special verdict. Stewart & Stevenson's proposed verdict form contained two interrogatories relating to reliance and intent to induce reliance.[7] After briefly discussing the proposed forms with counsel, the court ruled that:
 
 
 19
 I would not accept [Stewart & Stevenson's form] under any conditions and I would not accept either version of the requested special verdict. You will meet tonight and you will sit and grind it out as closely as you can agree, joint special verdict forms ... to submit to me tomorrow morning ...
 
 
 20
 At the close of the conference, the district court stated: "[I] assume the record is protected on both sides with reference to the plaintiff's [charges and form] that were offered and the defendant's that were offered and rejected."
 
 
 21
 The following morning a joint special verdict form was submitted by the parties to the district court. Stewart & Stevenson's counsel then informed the court:
 
 
 22
 With respect to this special verdict form that had been given to the Court this morning, I do for purposes of the record want to emphasize and reiterate our objection to this ... verdict.... It is the defendant's position that this is insufficient, inadequate, overly simplistic and does not comply with the case law that says when you use a special verdict form you are required to have the jury find as to each element of the several causes of action. Our special verdict forms, your Honor, were lifted almost entirely from the appendix of the Fradonia [sic] opinion ... The issues in that case were remarkably similar to the issues in this case. The fifth circuit approved the special verdict form used in Fradonia, and that is largely what we modeled ours after.[8] (emphasis supplied).
 
 
 23
 The district court overruled Stewart & Stevenson's objection.
 
 
 24
 The record thus refutes Marine Dynamics' claim that Stewart & Stevenson waived its proposed interrogatories by failing to secure a ruling on them and by failing to object when they were not included in the special verdict form. Instead, the record is clear that the district court did in fact rule on and reject Stewart & Stevenson's proposed verdict, including the two interrogatories here at issue, on the ground that the parties would be required to submit an agreed upon, joint verdict form. Further, the record is also clear that Stewart & Stevenson did in fact object to the failure of the proposed verdict form to cover all of the essential elements of a fraud claim, as did its proposed interrogatories modeled on Fredonia. Finally, even assuming that Stewart & Stevenson had waived its proposed interrogatories, the record reflects that Stewart & Stevenson made an oral objection to the joint special verdict form. In sum, Stewart & Stevenson utilized both methods of attempting to preserve its claim of error concerning the special verdict form.
 
 
 25
 The further dispositive issue is whether Stewart & Stevenson's use of these methods was sufficient to direct the district court's attention to the issues of reliance and intent to induce reliance in accord with the underlying purpose of both methods and Rule 49(a). Marine Dynamics claims that Stewart & Stevenson could have more clearly directed the district court's attention to these issues by specifically excepting to the district court's ruling rejecting its proposed verdict form and expressly stating that it was objecting to the submission of the joint verdict form absent these elements of a fraud cause of action. The best conceivable method of directing the court's attention to these issues is not, however, the threshold of the standard we must apply. Instead, we must determine if the methods used by Stewart & Stevenson as a whole were reasonably sufficient to direct the court's attention to these issues. Applying this standard, we hold that Stewart & Stevenson's submission of proposed interrogatories purporting to cover all of the elements of a Texas common law fraud claim, specifically identifying the elements here at issue, in combination with its objection to the joint special verdict form on the ground that it did not contain all the elements of such a claim, was reasonably sufficient to direct the district court's attention to the issues of reliance and intent to induce reliance and thus demand submission of these issues to the jury under Rule 49(a).
 
 
 26
 Since we hold that Stewart & Stevenson preserved its claim of error as to the omitted issues, we address the merits of this claim. Rule 49(a) allows special verdicts in the discretion of the trial court. The trial court also has discretion over the nature and scope of the issues submitted to the jury. Loffland Brothers Co. v. Roberts, 386 F.2d 540, 546 (5th Cir.1967). This discretion is limited, however, by the rule that the trial court "must submit all material issues raised by the pleadings and the evidence." Simien v. S.S. Kresge Co., 566 F.2d 551, 555 (5th Cir.1978) (emphasis supplied). In this case, reliance and intent to induce reliance are essential elements of a Texas common law fraud claim put in issue by the pleadings and the proof below. Even assuming that the district court's charge adequately instructed the jury on these elements, the "fact remains that nothing in the interrogatories would have allowed the jury to find [for the defendant on these grounds]." Id. We therefore hold that the district court erred in refusing to submit to the jury interrogatories on these elements.[9] See Huddleston, supra (error to omit contested material issue of reliance and causation in Rule 10b-5 fraud action); see also Chemetron, supra (error to omit contested material issues of duty to disclose, intent to induce action and material inducement in Texas statutory fraud action).
 
 
 27
 C. The Result: The Use of the Rule 49(a) Special Verdict
 
 
 28
 The purpose of a Rule 49(a) special verdict is to avoid confusion, appellate uncertainty and the need for additional proceedings by identifying the bases on which the jury rendered its verdict. See Jamison Co., Inc. v. Westvaco Corp., 526 F.2d 922, 935 (5th Cir.1976). In cases such as this, involving multiple, alternative theories of recovery, the Rule 49(a) special verdict has been described as a "wonder to behold." Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338, 344 (1967). This is so because the use of a special verdict in multiple theory of recovery cases eliminates the uncertainty as to whether the jury's verdict was based wholly on an improper theory requiring retrial of the case, as with a general verdict, see Jones v. Miles, 656 F.2d 103, 106 & n. 3 (5th Cir.1981); Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 693 (5th Cir.1975), and "reveals the whole case for what it is, both fact and law, for complete and final acceptance of the correct legal theory by the reviewing Court." Brown, supra, at 345. Thus, this Court has held that where an award of damages is authorized under two alternate theories of recovery, and the jury's finding of liability on one theory of recovery under a special interrogatory is supported by the evidence, the verdict and award will be affirmed on appeal. ADP-Financial Computer Services v. First National Bank, 703 F.2d 1261, 1266-67 (11th Cir.1983). The present case further illustrates the efficacy of the use of a Rule 49(a) special verdict in a case involving multiple, alternative theories of recovery.
 
 
 29
 The complaint alleged and this case was tried on alternate theories of negligence, gross negligence or fraud in the inducement of the contract, seeking the recovery of compensatory and punitive damages.[10] Pursuant to Rule 49(a), special interrogatories requiring a finding of liability or no liability as to each theory of recovery were submitted to the jury. The jury specifically found both negligence and gross negligence, as well as fraud, bases for liability and the recovery of damages. The special interrogatory submitted to the jury on the issue of compensatory damages, both direct and consequential, claimed in this case--cost of repairs, lost profits, damage to reputation and loss of goodwill--allowed the jury to award such damages only upon a finding of either negligence or gross negligence or fraud. The district court properly instructed the jury that damages could not be duplicated under these three theories of recovery.[11]
 
 
 30
 Under Texas law, either negligence, gross negligence, or fraud in the inducement of a contract, see e.g., Fredonia Broadcasting Corp., 569 F.2d at 259, can support an award of direct and consequential compensatory damages. The special interrogatory on damages and the court's instruction made it clear to the jury that these were alternate theories of recovery supporting the award of such damages and no double recovery was allowed. The special interrogatories on liability clarify the jury's findings as to the theories supporting the award. Since the jury specifically found negligence and gross negligence as liability bases for the damage award, both theories support such an award under Texas law, and, as we have held, the negligence and gross negligence claims were properly submitted to the jury, we affirm the verdict and judgment entered in this case despite the error in the court's submission of the fraud claim to the jury. Cf. ADP-Financial Computer Services, supra. Stated differently, the error in the district court's submission of the fraud claim to the jury is harmless in light of the fact that the jury also specifically found negligence and gross negligence as liability bases supporting the award of damages and does not require a retrial of this case. The special verdict used in this case well served the purpose of Rule 49(a): the jury's specific findings of negligence and gross negligence eliminate any doubt that the award of damages was based wholly on the theory improperly submitted to the jury, i.e., fraud, and thus eliminate the need for a retrial of this case.
 
 II. DAMAGES
 A. Disclaimer of Negligence Liability
 
 31
 The contract for the sale of the engines provides that Stewart & Stevenson "shall not be held responsible for damages in the use of this machinery, either original or consequential." The contract then provides the limited remedy of repair and replacement for damages to the engines. Stewart & Stevenson contends that this language limits or excludes any liability for damages resulting from its negligence, despite the contract's failure to expressly disclaim or limit "negligence" liability. We hold that the contract fails to meet the governing standard under Texas law for a disclaimer or limitation of negligence liability.
 
 
 32
 In Mostek Corp. v. Chemetron Corp., 642 S.W.2d 20, 26 (Tex.Civ.App.1982), the court applied the principles of construction developed in the context of the interpretation of clauses claimed to limit or exclude negligence liability in indemnity contracts to the present context of a claimed disclaimer of negligence liability in a sales contract. Relying on the leading Texas indemnity case addressing this issue, Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co., 490 S.W.2d 818 (Tex.1972), the Mostek court noted that: "[T]exas does not follow the 'express negligence rule'.... However, ... Texas requires that the exculpatory language be unequivocal." 642 S.W.2d at 26. In Chevron Oil v. E.D. Walton Construction Co., Inc., 517 F.2d 1119, 1121 (5th Cir.1975), the former Fifth Circuit further explicated and followed the Fireman's Fund Insurance Co. standard:
 
 
 33
 The general rule in Texas, subject to a number of exceptions, is that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract expresses such an obligation in clear and unequivocal terms. Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co., 490 S.W.2d 818 (Tex.1972); Sira & Payne, Inc. v. Wallace & Riddle, 484 S.W.2d 559 (Tex.1972); Joe Adams & Son v. McCann Construction Co., 475 S.W.2d 721 (Tex.1971). Although Texas has not formally adopted the rule that an indemnitee is protected against his own negligence only if the contract language expressly states that the contract covers the negligence of the indemnitee, the decisions of Texas courts indicate an increasingly stricter application of the clear and unequivocal rule and have "progressed toward the so-called 'express negligence' rule as near as judicially possible without adopting it." Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co., 490 S.W.2d at 822.
 
 
 34
 Id.
 
 
 35
 Applying this standard, the court held that "in order for [the indemnitee] to recover indemnity for its own sole negligence, the contract must contain language which is close enough to 'express negligence' that doubt is removed as to the parties['] intent." Id. (emphasis supplied). Language that the "Contractor agrees to ... indemnify and hold Company ... harmless ... against all loss, ... including without limitation and irrespective of negligence, all claims for injury to or death of persons, loss of or damage to property, and claims of workmen and materialmen," id. (emphasis in original), was held by the Chevron Oil court to fail to pass the Texas clear and unequivocal test.
 
 
 36
 The language of the present contract relied upon by Stewart & Stevenson does not refer to "negligence" liability at all. Nor does it clearly and unequivocally exculpate Stewart & Stevenson from the consequences of its negligence; the reference to "damages in the use of this machinery, either original or consequential," can easily be read to refer either to contract or negligence damages. Finally, Stewart & Stevenson has failed to point to any other language in the contract that is close enough to "express negligence" to resolve any doubt as to the parties' intent. We therefore hold that the language of this contract fails to meet the clear and unequivocal standard necessary under Texas law to disclaim or limit negligence liability.
 
 B. Lost Future Profits
 
 37
 Marine Dynamics' owner, Frank Pickard, testified at trial as to the dollar amount of Marine Dynamics' gross receipts for the years 1974 through 1981. Pickard then testified as to the dollar amount of money "left in the corporation after paying our expenses" for these years. No evidence defining the terms "monies left" or specifying the "expenses paid" was introduced. Pickard also testified that 94% of Marine Dynamics' gross receipts were attributable to business from the UAE. No evidence of the percentage of costs attributable to the UAE's business was introduced.[12] In closing argument, Marine Dynamics' counsel asked the jury to award it lost profits based on a formula of 94% of its average "monies left" projected for five years after Stewart & Stevenson's injury to its business with the UAE. The jury awarded Marine Dynamics $2,000,000.00 in lost profits.
 
 
 38
 The standards of Texas law to be applied to the recovery of lost profits are summarized in Hall v. Brown, 398 S.W.2d 404, 408 (Tex.Civ.App.1966):
 
 
 39
 "Profits are the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them." American Law Inst., Restatement, Contracts, Sec. 331(b). "Plaintiff is entitled to his net profits--not to his expected gross profits." Net profit is defined as the "gross amount that would have been received pursuant to the business or investment" less "the costs of running that business or attending that investment." 22 Am.Jur.2d, Damages, Sec. 178, p. 254. See 50 A.L.R. 1397. "In the calculation of net profits, allowance should be made for expenditures that the plaintiff would have been compelled to make." 17 Tex.Jur.2d, Damages, Sec. 144, p. 212. See id., Sec. 229, p. 290. It is not necessary that the data for estimating lost profits be established beyond reasonable certainty, City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243, but the basis for applying the net loss measure of damage may not be left entirely to conjecture. Thomas v. Basden & Carrell, Tex.Civ.App., 4 S.W.2d 336, 339, per Gallagher, C.J.
 
 
 40
 Stewart & Stevenson contends that Marine Dynamics failed to meet its burden of proving lost profits because no evidence was introduced of the costs associated with the UAE business. Marine Dynamics correctly notes that there is no one set formula of proving lost profits, and stands on its 94% of "monies left" formula as evidence of the costs associated with the UAE business and net profits.[13] We hold that this formula is entirely too conjectural a basis for a determination of the costs associated with the UAE business and thus that Marine Dynamics failed to establish its lost profits.
 
 
 41
 The formula is flawed in several respects: it does not provide a reasonable estimate of total net profits or the proportion of lost profits attributable to the loss of UAE business. First, the evidence provides no definition of "monies" in the corporation, where such monies came from or when they were received. No evidence exists by which the jury could draw the inference, assumed by Marine Dynamics' argument, that such "monies" somehow represented gross pecuniary gains attributable to Marine Dynamics' business as a whole. Second, the fact that some expenses were deducted from the ill-defined total does not solve this problem. Again, there is simply no evidence as to what the term "expenses" does or does not include. No evidence exists from which the jury could draw the inference, assumed by Marine Dynamics' argument, that such "expenses" are somehow equivalent to the cost of obtaining its gross pecuniary gains for its business as a whole. Third, even accepting for the purposes of argument Marine Dynamics' unsupported assumptions that "monies left" equal its total gross pecuniary gains less the cost of obtaining them, all that has been proved by this formula so far is net profits for Marine Dynamics' business as a whole. This clearly will not support an award of lost profits attributable to the UAE portion of that business. In order to arrive at the net profit calculation for the UAE business, it must be assumed that the 94% of gross receipts figure attributable to the UAE business is also applicable to net profits. Clearly, gross receipts do not equal net profits, and there is simply no evidence in this case that 94% of both Marine Dynamics' gross pecuniary gains as well as 94% of its costs of obtaining them were attributable to the UAE business. There is no evidence in this record as to the amount of costs associated with the UAE business; it does not follow, in the absence of any supporting evidence, that because 94% of Marine Dynamics' gross receipts were attributable to the UAE business, 94% of its costs were as well.
 
 
 42
 In sum, the 94% of gross receipts figure, applied to the equally unsupported "monies left" calculation, did not provide any basis from which the jury could make a reasonable estimate of net lost profits.[14] We therefore hold that Marine Dynamics failed to meet its burden of establishing net lost profits, and that the jury's award of lost profits cannot stand.
 
 C. Damage to Reputation
 
 43
 The sum total of the evidence offered by Marine Dynamics on the issue of damage to its reputation was testimony to the effect that Marine Dynamics had an excellent reputation in the UAE which was significantly undermined or destroyed by the failure of the boats to function properly. No evidence was presented as to any formula or basis by which the jury could determine the amount of damage to reputation. Nor was the jury instructed as to a standard for determining the amount of damage to reputation. In closing argument, counsel for Marine Dynamics stated as to reputation: "[Y]ou cannot put a price on it. You cannot figure out the arithmetic. Our suggested figure to you on that item is $1,000,000.00." The jury awarded Marine Dynamics $1,000,000.00 for damage to its reputation.
 
 
 44
 Recovery for injury to business reputation is probably permitted under Texas law as an element of compensatory damages.[15] See Texas Power & Light Co. v. Barnhill, 639 S.W.2d 331, 333 (Tex.Civ.App.1982). Generally, in order to recover compensatory damages a plaintiff must meet not only the burden of proving the fact of damage but also the burden of proving a basis for a determination of the amount of damage. Although this burden of proving the amount of damage is not an onerous one, it must still be met.
 
 
 45
 Marine Dynamics claims that since damage to business reputation cannot be proved with mathematical certainty, it was somehow relieved of its obligation to prove not only the fact but a basis for determining the amount of damage to its reputation. First, Marine Dynamics confuses the distinction between the weight of the burden of proving the amount of damage and the requirement that the amount be proved. Second, Texsun Feeds v. Ralston Purina, 447 F.2d 660, 671-72 (5th Cir.1971) (Texas law), cited by Marine Dynamics in support of this claim, does not provide an exception to the general requirement of proof of the amount of damage in the case of damage to business reputation. In Texsun, the court held that: "[t]he proved existence of ... losses, coupled with the rebates and adjustments which Texsun was forced to make to its customers ..., constituted a sufficient predicate for the jury's determination that Texsun suffered damage to the extent of $10,000.00 for lost profits and diminished business reputation." Id. at 672. Texsun does not validate Marine Dynamics' failure to prove a sufficient predicate for the jury's determination of the amount of damage to its reputation, especially in light of our holding that the "monies left" formula did not provide a predicate for the award of lost profits or diminished reputation and the jury's apparent adoption of the figure given by counsel in closing argument as the amount of its damage to reputation award. We therefore hold that, since Marine Dynamics failed to meet its burden of establishing some basis in the evidence to support the jury's determination as to the amount of damage to its reputation, this award cannot stand.
 
 D. Loss of Goodwill
 
 46
 Marine Dynamics sought to prove damage to its goodwill from the failure of the boats to function properly through the testimony of an economist, Ledford. He stated his opinion, based on his study of Marine Dynamics' tax returns for 1974 through 1981 and his decision to use the years 1979 through 1981 for his analysis of the actual dollar valuation of Marine Dynamics' total goodwill, that as of December of 1981 Marine Dynamics' total goodwill had a value of approximately $1,868,000.00. No evidence of any other valuation of Marine Dynamics' goodwill at any other time period was introduced. No evidence that 94% of Marine Dynamics' total goodwill was attributable to the UAE was introduced. In closing argument, counsel for Marine Dynamics asked the jury to award 94% of $1,868,000.00 for loss of goodwill: $1,690,000.00. The jury awarded Marine Dynamics $1,690,000.00 for loss of goodwill damages.
 
 
 47
 It is axiomatic that the measure of damage to business property, such as goodwill, is based on a measurement of the difference in value of the property before and after the injury. Scott v. Doggett, 226 S.W.2d 183, 187-88 (Tex.Civ.App.1949). There is simply no evidence in this case on which the jury could base a determination of the measure of damage to Marine Dynamics' goodwill: the difference in the value of the goodwill pre-injury and post-injury.
 
 
 48
 The injury complained of in this case, the failure of the engines to function properly, occurred at the earliest in August of 1979 with the first delivery of the boats and continued at the latest through early 1980 with the completion of delivery. Although the December 1981 figure represents the value of Marine Dynamics' goodwill close to its highest point, there is simply no evidence in this case of a later valuation of goodwill to which the jury could compare this figure and arrive at the measure of damage to goodwill. Ledford did not testify that the December 1981 figure was such a measure; he testified that it represented the value as of that time of Marine Dynamics' goodwill, and did not testify as to any other valuation. Clearly, the December of 1981 figure of $1,868,000.00 argued to and apparently adopted by the jury does not represent any pre-injury less post-injury measure of damage to Marine Dynamics' goodwill and, in the absence of any basis of a later valuation from which the jury could make this determination, this award cannot stand.[16]
 
 E. Cost of Repairs
 
 49
 Marine Dynamics offered evidence on the issue of the cost of its repairs to the engines that it spent approximately $295,000.00 to keep the engines operating for the one-year period beyond the initial period during which it was under guarantee. In closing argument, counsel for Marine Dynamics requested an award of $295,000.00 for the cost of repairs. The jury awarded Marine Dynamics $500,000.00 for repairs. Stewart and Stevenson claims that the $205,000.00 difference between Marine Dynamics' evidence of the cost of repairs and the jury's award is not supported by any evidence in this case and is excessive.[17] We agree, and remand on this issue to the district court with instructions to order a $205,000.00 remittitur of the damages awarded Marine Dynamics for its cost of repairs.[18]
 
 F. Punitive Damages
 
 50
 The jury found both gross negligence and fraud bases of liability in this case. Either gross negligence or intentional or reckless fraud will support an award of punitive damages under Texas law. See, e.g., Maxey v. Freightliner Corp., 665 F.2d 1367, 1374 (Former 5th Cir.1982) (en banc); Fredonia Broadcasting Corp. v. RCA Corp., 569 F.2d 251 (5th Cir.1978). The jury awarded Marine Dynamics $5,400,000.00 in punitive damages. On Stewart & Stevenson's motion for judgment notwithstanding the verdict, the district court struck the punitive damages award in its entirety. Marine Dynamics cross-appeals this ruling. In light of our holding that the district court erred in submitting the fraud theory to the jury, and our analysis of the effect of this holding on the need for a retrial on compensatory damages supported by special findings as to negligence and gross negligence as well as fraud, we consider only whether the district court erred in granting judgment notwithstanding the verdict as to the award of punitive damages under the gross negligence theory, and, if so, whether the jury's punitive damage award should be reinstated in its entirety.
 
 
 51
 The district court noted in ruling on Stewart & Stevenson's motion for judgment notwithstanding the verdict that "punitive damages are allowable under Texas law under theories of both intentional fraud and gross negligence," and held that "it was error to allow the issue of punitive damages to be submitted to the jury. As a matter of law, the facts adduced at trial simply do not rise to the level of egregious conduct which Texas law requires as a predicate for an award of punitive damages." The court also held that it would adhere to all of its other rulings "made during trial except on the matter of punitive damages." Marine Dynamics reads the district court's opinion as holding that although it did not err in denying Stewart & Stevenson's motion for directed verdict and submitting the issue of the gross negligence basis of liability to the jury, which the jury found, a further requirement existed as to the egregiousness of the conduct under the gross negligence theory in order to support the award of punitive damages which was not met in this case. So interpreted, Marine Dynamics claimed the district court erred as a matter of Texas law in requiring proof beyond that of gross negligence to support the punitive damage award. Stewart & Stevenson claims the district court's opinion should be read as a holding that the jury's finding of gross negligence was not supported by the evidence in this case, and hence would not support an award of punitive damages.[19]
 
 
 52
 We do not resolve the difference in the parties' interpretation of the district court's opinion because we hold that under either interpretation our analysis is the same. Texas law is clear: a finding of gross negligence, defined as "such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare or the safety of the persons affected by it," Burk Royalty Co. v. Walls, 616 S.W.2d 911, 920 (Tex.1981), alone is the necessary and sufficient predicate for an award of punitive damages. See, e.g., id.; Maxey, supra; Atlas Chemical Industries, Inc. v. Anderson, 524 S.W.2d 681, 688-89 (Tex.1975). Therefore, the issue that we must determine is whether there was sufficient evidence of gross negligence to submit this case to the jury. After a careful review of the record, we conclude that there was ample evidence from which gross negligence, as defined by Texas law, could be inferred by the jury,[20] and thus that the district court erred in granting Stewart & Stevenson's motion for judgment notwithstanding the verdict and striking the punitive damages award. Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc).
 
 
 53
 Stewart & Stevenson claims that if reinstated the jury's award of punitive damages of $5,400,000.00 is clearly excessive to the amount of compensatory damages properly awarded, $295,000.00, and should be reduced. It is clear that Texas law requires that "the amount of exemplary damages should be reasonably proportioned to the actual damages found." Southwestern Investment Co. v. Neeley, 452 S.W.2d 705 (Tex.1970). We do not resolve this question here but remand for consideration of the proper amount by the district court in light of all the facts and circumstances of the case.
 
 III. CONCLUSION
 
 54
 For the foregoing reasons, we AFFIRM the district court's judgment entered on the jury's liability findings of negligence and gross negligence, REVERSE the judgment entered on the finding of fraud, VACATE the damages awarded under the judgment and verdict for lost profits, goodwill and reputation, and REMAND with directions to order a $205,000.00 remittitur on the damages awarded for cost or repairs, and to determine the proper amount of punitive damages to be awarded.
 
 
 
 [1]
 Marine Dynamics' suit was consolidated with a lawsuit previously filed by Stewart & Stevenson in the Southern District of Florida against Marine Dynamics and its two principal officers to recover damages for their claimed wrongful drawing against a letter of credit for $250,000.00. The resolution of the consolidated Stewart & Stevenson action is not at issue in this appeal
 
 
 [2]
 The verdict form, as submitted to and filled out by the jury follows:
 We, the Jury, Find as Follows:
 Question 1: Was Stewart & Stevenson negligent?
 YES yes NO________
 Question 2: Answer this question only if you have answered question 1 "Yes."
 Was Stewart & Stevenson grossly negligent?
 YES yes NO________
 Question 3: Did Stewart & Stevenson make misrepresentations of material facts?
 YES yes NO________
 Question 4: Answer this question only if you have answered question 3 "yes." Did Stewart & Stevenson make a material misrepresentation of fact and at the time know that such statement was false?
 YES yes NO________
 Question 5: Answer this question only if you have answered question 3 "yes." Did Stewart & Stevenson make a material representation of fact with recklessness without any knowledge of its truth or falsity?
 YES yes NO________
 Question 6: Answer this question only if you have answered question 1 or 2 or 3 or 4 or 5 "yes." What is the total amount of compensatory damages sustained by Marine Dynamics which was legally caused by Stewart & Stevenson for:
 A) Lost Profits $ 2,000,000.00 (2 mil)
 B) Damage to Good $ 1,690,000.00
 Will
 C) Damage to $1,000,000.00 (1 mil)
 Reputation
 D) Repairs $ 500,000.00 (.5 mil)
 Question 7: Do you find that Marine Dynamics was entitled to draw against the $250,000 letter of credit?
 YES yes NO________
 Question 8: If your answer to question number 7 is "yes" do the damages awarded in question number 6 include the $250,000?
 YES ________ NO no
 Question 9: Was Marine Dynamics negligent?
 YES ________ NO no
 Question 10: Answer this question only if you have answered question 1 and 9 "yes."
 ....
 Question 11: Answer this question only if you have answered question 2 or question 4 or question 5 "yes." What amount of punitive damages, if any, do you assess against Stewart & Stevenson?
 $5,400,000.00 (6%)
 The special verdict form in this case was submitted to the jury pursuant to Fed.R.Civ.P. 49(a). No general verdict was requested of the jury or entered by it. Although Rule 49(a) speaks of the submission of "questions," and not "interrogatories" as in Rule 49(b), we follow the nomenclature used by the parties and refer in this opinion to the submission of "interrogatories" under Rule 49(a).
 
 
 [3]
 TheEleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled or modified by this Court en banc. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)
 
 
 [4]
 We find no merit to Stewart & Stevenson's claim that the Nobility Homes court's distinction between the availability of strict liability and negligence causes of action seeking recovery of economic loss is dicta. The plaintiff in Nobility Homes, Shivers, asserted causes of action for breach of implied warranty and negligence against the defendant, Nobility Homes. "The trial judge made findings that Nobility's negligence was a proximate cause of Shivers's damages," 557 S.W.2d at 83, and entered judgment in Shivers' favor on both his implied warranty and negligence causes of action. The Texas Court of Civil Appeals overruled Nobility Homes' challenges to the sufficiency of the evidence to support the trial court's findings of negligence, and affirmed both the negligence and implied warranty bases for its judgment. Although Nobility Homes did not challenge the sufficiency of the evidence to support the trial court's findings of negligence before the Texas Supreme Court, that court explicitly recognized the implicit basis for the lower courts' judgment, that a cause of action for negligence seeking the recovery of economic loss existed, in affirming this "separate and independent ground of recovery." Id. The Texas Supreme Court's affirmance of the lower courts on this point and its explicit recognition of the distinction between negligence and strict liability causes of action seeking the recovery of economic loss is clearly an alternate holding in support of its affirmance of the judgment as a whole in Shivers' favor
 
 
 [5]
 The special interrogatories submitted to the jury on Marine Dynamics' fraud claim consisted of three questions: first, whether Stewart & Stevenson has made a misrepresentation of material fact; second, whether Stewart & Stevenson knew that such statement was false; and third, whether the statement was made recklessly, without any knowledge of its truth or falsity. See note 2, supra. Under Texas law, the essential elements for recovery for common law fraud are:
 (1) that a material representation was made;
 (2) that it was false;
 (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;
 (4) that he made it with the intention that it should be acted upon by the party;
 (5) that the party acted in reliance upon it;
 (6) that he thereby suffered injury.
 Stone v. Lawyers Title Insurance Corp., 554 S.W.2d 183, 185 (Tex.1977).
 
 
 [6]
 Rule 49(a) provides:
 Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.
 (emphasis supplied).
 
 
 [7]
 Questions 21 and 23 of Stewart & Stevenson's proposed special verdict form:
 
 
 [21]
 [If you find that Stewart & Stevenson made a false statement of material fact to Marine Dynamics in connection with the sale of the thirty-four marine diesel engines], do you find that Marine Dynamics was justified in relying on the false statement?
 
 
 [23]
 As to any false statements above-described made by Stewart & Stevenson, do you find from the preponderance of the evidence that such false statements were made with the intention, design and purpose of deceiving Marine Dynamics and with no intention of performing that which was promised, as opposed to mere negligent false statements? R.Supp. Vol. 1 at 37, 44
 Marine Dynamics attacks these interrogatories on the grounds that they are inadequate, misleading, improper and do not identify the intent to induce reliance issue. Specifically, Marine Dynamics claims that question 21 is flawed because it asks the jury to determine if Marine Dynamics was justified in relying on the false statements without asking for a preliminary determination of whether Marine Dynamics in fact relied upon the statements, and thus improperly assumes one of the elements of the fraud issue. As to question 23, Marine Dynamics claims that it refers solely to the issue of fraudulent intent and not to intent to induce reliance. A similar argument was considered and rejected by the court in Huddleston, supra:
 The plaintiffs urge that LoPatin, Share and H & M did not sufficiently raise the reliance issue and did not submit the "proper special issue to the court." It is helpful for counsel to assist the court by framing the issue in the very terms that pose it most objectively for the jury. However, so long as a party demands the submission of an omitted issue of fact and directs the court's attention to that issue, that party does not waive the right to a jury determination. Rule 49(a), Fed.R.Civ.P. See Ford Motor Co. v. Dallas Power & Light Co., 499 F.2d 400, 407 & n. 11 (5th Cir.1974); Simien v. S.S. Kresge Co., 566 F.2d 551 (5th Cir.1978).
 ....
 While the proposal did not discriminate between misstatement and omission in issues, it sufficiently demanded jury consideration of the reliance issue to require the submission of that issue. 640 F.2d at 550.
 Likewise, although inartfully drafted, question 21 clearly refers to the issue of reliance and question 23, fairly read, covers fraudulent intent and intent to induce reliance. We hold that both questions, as drafted, were sufficient to direct the district court's attention to the respective issues of reliance and intent to induce reliance, especially in light of Stewart & Stevenson's objection to the joint verdict form.
 
 
 [8]
 Stewart & Stevenson claims that it was understood by the district court and the parties from the charge conference that its reference to Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781 (5th Cir.1973), appeal after remand, 569 F.2d 251 (5th Cir.1978), meant the use of a special verdict form containing all of the essential elements of a Texas law fraud claim, including reliance and intent to induce reliance. The record and the Fredonia opinions support this claim
 
 
 [9]
 Because we hold that the district court committed reversible error in refusing to submit interrogatories on reliance and intent to induce reliance to the jury, we do not address Stewart & Stevenson's other challenges to the fraud liability basis of the verdict and judgment
 
 
 [10]
 The issue of punitive damages is discussed in part II.F. of this opinion
 
 
 [11]
 The district court instructed the jury that:
 [I]f you find for Marine Dynamics on one of its claims against Stewart & Stevenson, you should give equal consideration to the other claims. Damages may not be duplicated, however, it is necessary that you consider and resolve the issues on each of the claims of Marine Dynamics to inform the Court of your findings on questions of fact which may have a bearing on matters that will be resolved by the Court.
 R. Vol. 25 at 18.
 
 
 [12]
 Brent Pickard, Frank Pickard's son and a shareholder in Marine Dynamics, testified on cross-examination:
 Q. Do you know how you allocate Marine Dynamics' overhead on a given job?
 A. No, I don't think we do.
 
 
 [13]
 Marine Dynamics concedes that evidence of its gross receipts alone does not establish lost profits
 Marine Dynamics introduced into evidence its federal tax returns for 1978 through 1981. They reveal these figures:
 1978
----
 Taxable income ($118,966) Loss
 Income after tax 0
1979
----
 Taxable income $237,762
 Income after tax $148,598
1980
----
 Taxable income $ 5,867
 Income after tax $ 5,437
1981
----
 Taxable income $ 54,019
 Income after tax $ 52,223
 These figures do not agree with the "monies left" figures given for these years in the oral testimony nor is there any apparent relationship between the two sets of figures. We have examined the tax returns, and we cannot determine how the "monies left" figures were determined from the figures shown on the returns. Nor was it suggested at trial to jurors how they might do so. Instead counsel relied upon the "monies left" figures, the source and manner of calculation of which were not explained.
 
 
 [14]
 The failure to establish the amount of total net profits distinguishes the present case from those which Marine Dynamics cites in support of its formula by analogy. Thus, in Norris v. Bovina Feeders, 492 F.2d 502, 507 (5th Cir.1974) (Texas law), the plaintiff testified that if his business had not been crippled by the defendant's wrongful refusal to deal he would have been able to do another job at a specified profit. This specified profit included plaintiff's testimony that from his exerience "cost per unit processed of $8.17 and a return of $12.00" would be realized. In Texsun Feeds v. Ralston Purina, 447 F.2d 660, 672 (5th Cir.1971) (Texas law), the plaintiff proved both its gross receipts and its profits and losses from the sale of defendant's grain supplement. Finally, in Bell Helicopter v. Bradshaw, 594 S.W.2d 519, 537 (Tex.Civ.App.1979), the court allowed plaintiff's testimony as to anticipated profits from an established business without reaching the issue of whether these were net lost profits, and, in any event, plaintiff's testimony that he was looking forward to "making" certain profits can be read to cover net lost profits. In sum, none of these cases validate the recovery of lost profits absent evidence of net lost profits, including by definition the cost of obtaining such profits
 
 
 [15]
 There is some doubt as to whether damage to reputation is a distinct element of damages apart from lost profits and lost goodwill. If damage to reputation is not a distinct form of damages under Texas law, the award of the jury cannot stand because it was duplicative
 
 
 [16]
 We further find that, as an alternate ground for striking this award, even assuming that Marine Dynamics had established a proper measure of damages, there is again, as with lost profits, simply no evidence in this case that the 94% of gross receipts attributable to the UAE business was mirrored in the amount of Marine Dynamics' overall goodwill attributable to the UAE business
 
 
 [17]
 Marine Dynamics claims that the evidence left room for the jury to award more than $295,000.00 for repairs because this figure, which it presented to the jury through documentary exhibits and the testimony of Roderick Pickard, a shareholder in Marine Dynamics, only included the money it spent for additional mechanics, and not for all personnel whose services were required to keep the engines running. This interpretation of the $295,000.00 figure is contradicted by the testimony of Frank Pickard that:
 The $295,000.00 figure consisted of the extra labor we had to employ to try to fulfill our guarantee on these sixty-six-foot patrol boats, to repair them, the purchase of parts in the UAE and all over the United States, travel back and forth, going out there to look after these problems, hundreds of telephone calls, telexes, and everything related to the work in trying to keep those engines running for the one-year period beyond the initial one-year period that we were under guarantee.
 R. Vol. 12 at 54.
 In any event, although Marine Dynamics' personnel did testify that their services were required to keep the engines running, no evidence by which a valuation of their services could be determined in addition to the $295,000.00 figure was introduced by Marine Dynamics. In sum, there is no evidence to support the additional $205,000.00 award.
 Marine Dynamics further claims that the highest estimate of the cost of repairs figure was $300,000.00. The testimony it cites does not, however, support this proposition. Joe Manning, the president of Stewart & Stevenson, testified that Marine Dynamics drew against the letter of credit for $250,000.00 to cover a variety of expenses, and that as of the time of trial, "the combined principal, $250,000.00 plus the interest would have been somewhere between 290 and $300,000.00." (emphasis supplied).
 
 
 [18]
 Although our ordinary practice in such a case is to direct the district court on remand to require a remittitur or, at the option of the plaintiff, to grant a new trial on the issue of the amount of damages sustained, see Wilson v. Taylor, 733 F.2d 1539, 1550 (11th Cir.1984); Natco, Inc. v. Williams Brothers Engineering Co., 489 F.2d 639, 641 (5th Cir.1974), since Marine Dynamics states in brief that a reversal on this issue would "only require a remittitur--not a new trial," Appellee and Cross-Appellant's Brief at 51, we do direct
 
 
 [19]
 Stewart & Stevenson also claims that the gross negligence theory will not support an award of punitive damages because the district court erred in instructing the jury on the definition of gross negligence. First, since Stewart & Stevenson did not object to the gross negligence instruction given at trial we review this claim only for plain error. Second, we hold that the charge actually given correctly defined gross negligence in accordance with Texas law, "gross negligence means an entire lack of care which shows that the acts or omissions complained of are the result of conscious indifference to the rights of the persons affected," and that in light of this fact the court's subsequent charge that:
 If the greater weight of the evidence does not support the claim that Stewart & Stevenson was recklessly indifferent to the rights of Marine Dynamics by delivering engines which it knew would fail or in the exercise of even the slightest care should have known would fail, then your verdict should be for Stewart & Stevenson on this issue. (emphasis supplied),
 was not, in the context of the charge as a whole, plain error.
 
 
 [20]
 The record reflects evidence that Stewart & Stevenson assumed that the engines would deliver 650 horsepower with 140 millimeter injectors without prior experience with such a modification, without testing, and with the knowledge that neither DDA nor the American Bureau of Shipping would approve such a modification of the engines. Atlas Chemical Industries, Inc., supra, upheld a finding of gross negligence on similar facts